Darla **SHARPE** and John Sharpe, Plaintiffs,

v.

**WEST INDIAN COMPANY, LTD.,** Royal Caribbean Cruises, Ltd., and Robert Lynch Trucking, Defendants.

No. 1998–205.

District Court, Virgin Islands, St. Thomas Division.

Sept. 15, 2000.

Richard P. Farrelly, St. Thomas, U.S.V.I., for the plaintiffs.

Francisco G. Bruno, San Juan, Puerto Rico, for the defendant Royal Caribbean Cruises.

Mathhew J. Duensing, St. Thomas, U.S.V.I., for the defendant West Indian Co.

Alexandra L. Treadway–Bartsch, St. Thomas, U.S.V.I., for the defendant Robert Lynch Trucking.

## MEMORANDUM

MOORE, District Judge.

The Court having heard the oral argument and reviewed the summary judgment motion of defendant Royal Caribbean Cruise, Ltd. ["Royal Carribean"] along with the motions of co-defendants, West Indian Company, Ltd. ["WICO"], and Robert Lynch Trucking, Ltd. ["Robert Lynch Trucking"], and the response of plaintiffs Darla and John Sharpe [the "Sharpes"] and the plaintiffs' replies thereto, will grant Royal Caribbean's motion for summary judgment as it pertains to itself, but will deny the motions with respect to WICO and Robert Lynch Trucking, for the reasons set forth below.

### I. FACTUAL SUMMARY

In October of 1997, plaintiffs took a Caribbean cruise on the "Rhapsody of the Seas," a cruise ship [the "vessel"] owned by Royal Caribbean. The cover of their ticket booklet contained a warning that the cruise ticket contract [the "ticket contract" or "contract"] inside the ticket booklet limited the rights of passengers and should be read carefully. The cover of the ticket booklet stated:

### IMPORTANT NOTICE

The tan pages of this booklet contain your cruise ticket contract which limits your rights. It is important that you

carefully read all terms of the contract and retain it for future reference.

Inside the booklet, twenty clauses, printed on four separate pages, recited the rights of and duties to and between the "Carrier" and "Passenger."

On October 31, 1997, the Rhapsody of the Seas visited St. Thomas, where plaintiffs disembarked onto the dock owned by WICO. As they walked along the dock towards a waiting tour bus, a white railing fell onto Darla Sharpe, causing her injuries. To provision the vessel, Robert Lynch Trucking had removed the railing from its usual position and propped it up against another railing. Darla Sharpe seeks damages for her injuries, and John Sharpe claims loss of consortium as a result of those injuries.

The Sharpes filed suit in this Court on December 8, 1998, more than one year after the alleged incident occurred, and in apparent contravention of the forum selection clause contained in the ticket contract. Defendant Royal Caribbean moved for summary judgment on behalf of all three defendants, or in the alternative, for transfer of venue to the Southern District of Florida. Robert Lynch Trucking and WICO each moved to join Royal Caribbean's motion for summary judgment.

## II. DISCUSSION

The Sharpes' complaint having been filed outside the one-year limitation established in clause 13(b) of the contract, the Court will grant summary judgment to Royal Caribbean. The Court, however, will deny the motions of WICO and Robert Lynch Trucking, because clause 13(d), which purports to extend to third parties the exclusions and limitations of the contract, is ambiguous and did not adequately put the Sharpes on notice of which exclusions and limitations were to be extended to which third parties.

### A. Standard for Summary Judgment

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986). "Evaluating time limits of notice and filing of a passenger's lawsuit constitutes a legal determination suitable for disposition by summary judgment." *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 244 (3d Cir.1987). In making this determination, a court must draw all reasonable inferences in favor of the non-movant. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

### B. Summary Judgment Will Be Entered in Favor of Royal Caribbean.

Royal Caribbean moved for summary judgment in its favor based on the requirement to sue within one year of personal injury during the cruise, and the uncontroverted fact that more than one year passed between the time of the alleged injury and the commencement of this action. The Sharpes contend that the contract is ambiguous in its application to on-shore incidents. They further claim that maritime jurisdiction does not extend to land-based incidents, thereby rendering clause 13(b) inapplicable to this shoreside injury. The Court rejects the Sharpes' assertions.

#### 1. *Applicability and Validity of Time Limitation in this Maritime Ticket Contract.*

■ The Court applies maritime contract law to this contract dispute, because the subject matter of the contract is maritime in nature.[1] *See* 1 BENEDICT, ADMIRAL-

---

1. The Sharpe's extensive discussion of federal admiralty jurisdiction over maritime tort

claims is superfluous because (1) they have not invoked this Court's admiralty jurisdic-

TY, § 1.04[B] (7th ed.1997). Here, the subject matter involves conveyance of a passenger on an ocean vessel, therefore the ticket contract is clearly a maritime contract. *See, e.g., The Moses Taylor,* 71 U.S. (4. Wall.) 411, 18 L.Ed. 397 (1867) (contract to transport passenger in ship or vessel on high seas or on tide waters is maritime contract and within jurisdiction of admiralty); *Hodes v. S.N.C. Achille Lauro,* 858 F.2d 905, 909 (3d Cir.1988) ("A passenger ticket for an ocean voyage is a maritime contract [and thus is] governed by the general maritime, not the local state, law.").

By statute, "maritime contracts may contain valid time limitations...." *See Lubick v. Travel Servs., Inc.,* 20 V.I. 308, 311, 573 F.Supp. 904, 905 (D.Vi.1983). To be valid, the time limitation must allow an injured party at least six months from the day of the injury to give notice of a claim and one year to institute a suit. *See* 46 U.S.C.S. app. § 183b(a) (Law.Co-op.1987 & Supp.1999).[2] Clause 13(b) of the ticket contract meets these minimum requirements.

 To determine the enforceability of a time limitation clause, the Court asks, first, whether the cruise ticket contract contained adequate warnings directing the passenger to read the terms inside the ticket, and second, whether the physical characteristics, such as the location and size of the warning, and the simplicity of the terms meet the "standard of reasonable communicativeness." *See Marek,* 817 F.2d at 244. Whether the terms and conditions of this cruise ship ticket contract were reasonably communicated to the passenger is a question of law for the court. *See Hodes,* 858 F.2d at 908.

 It is undisputed that the cover of the ticket contract directed the Sharpes to read the terms inside it. The cover contains the words "IMPORTANT NOTICE" in bold letters and directs the Passenger to carefully read the "cruise ticket contract which limits your rights." The Sharpes do not deny that the physical characteristics of the warning were sufficient to reasonably communicate the warning itself. The importance of clause 13(b) of the ticket contract is further highlighted by its appearance in uppercase, bold typeface. It warns that

**NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER OR THE VESSEL FOR ... PERSONAL INJURY ... DEATH ... UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DAY WHEN THE ... PERSONAL INJURY ... OCCURRED ... NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.[3]**

tion, (2) the defendants have not moved to dismiss for lack of admiralty jurisdiction, and (3) the limitations and exclusions at the heart of Royal Caribbean's motion to dismiss lie purely in contract. Whether the underlying tort is a maritime tort is irrelevant for our purposes.

2. Section 183b(a) states in relevant part
 It shall be unlawful for the manager, agent, master, or owner of any sea-going vessel ... to provide by ... contract ... a shorter period ... for the institution of suits ... than one year, such period of the institution of suits to be computed from the day when the death or injury occurred.

3. Ticket contract clause 13(b) in full states:
 **NO SUIT SHALL BE MAINTAINABLE AGAINST CARRIER OR THE VESSEL**

**FOR DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF PASSENGER UNLESS WRITTEN NOTICE OF THE CLAIM, WITH FULL PARTICULARS, SHALL BE DELIVERED TO CARRIER AT ITS PRINCIPAL OFFICE WITHIN SIX (6) MONTHS FROM THE DAY WHEN SUCH DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF PASSENGER OCCURRED; AND IN NO EVENT SHALL ANY SUCH SUIT FOR ANY CAUSE AGAINST CARRIER OR THE VESSEL FOR DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH BE MAINTAINABLE UNLESS SUCH SUIT SHALL BE COMMENCED (FILED) WITHIN ONE (1) YEAR FROM THE DAY WHEN THE DELAY, DETENTION, PERSONAL INJURY,**

The Court concludes that clause 13(b) is valid and enforceable against the Sharpes and requires that Royal Caribbean be dismissed from the case, unless it is otherwise not applicable to the facts of this lawsuit.

2. *Ticket Contract's Time Limitation Reasonably Applies to Darla Sharpe's Injury on WICO Dock.*

■ The Sharpes argue that clause 13(b) should not apply to injuries that happened off the vessel, because its words are ambiguous, and any ambiguities must be construed against the drafter, Royal Caribbean.[4] They would have the Court find such ambiguity in the contract's definition of "Passenger" in clause 1(a) to include "all persons traveling under this ticket and their heirs and representatives." Plaintiffs argue that once Darla Sharpe got off the vessel at its regularly scheduled port of call in St. Thomas, she was no longer "traveling under this ticket," and therefore was no longer a "Passenger" for the purpose of the ticket contract and its limitations and exclusions. The Court disagrees with this tortured reading of clause 1(a).[5]

Clause 1(a) unambiguously defines one party to the contract, the Passenger, just as clause 1(b) defines the other party:

**ILLNESS OR DEATH OCCURRED AND PROCESS SERVED WITHIN THIRTY (30) DAYS AFTER FILING, NOTWITHSTANDING ANY PROVISION OF LAW OF ANY STATE OR COUNTRY TO THE CONTRARY.**

4. After examining the pertinent terms of the contract, the Court will apply the maxim *omnia praesumuntur contra proferentem* and favor that meaning which least benefits the drafter, if it finds one or more provisions are subject to multiple reasonable meanings.

5. For one thing, it is at odds with the inclusion of the Sharpes' heirs and representatives as Passengers. The Sharpes reasonably cannot have considered themselves Passengers only while they were on board the vessel, because none of these Passenger heirs have ever set foot on the Rhapsody of the Seas.

6. The Sharpes seem to confuse "Passenger," as that term is defined in the ticket contract, with "passenger," a term of art used in maritime tort law. The latter term is a narrow one, which defines passenger as a person who

" 'Carrier' means Royal Caribbean Cruises Ltd., all Vessels, and their respective employees, agents, affiliates, successors and assigns." Neither definition says anything about which incidents are covered and which are not covered by the exclusions and limitations of the contract.[6] When Darla Sharpe paid her money and received her ticket, she, as the Passenger, and Royal Caribbean, as the Carrier, entered into a maritime contract, the terms of which are contained in the ticket contract. Clearly she did not become a party to the contract only when she boarded the vessel and cease to be a party covered by the contract each time she disembarked at the various ports of call on the vessel's regular itinerary.

Other clauses of the ticket contract confirm that the Sharpes were Passengers well before they ever boarded the vessel to begin the voyage, when off the ship during the cruise, and during their trip back home after completing the voyage. For example, clause 5 specifically acknowledges that the ticket contract covers things provided for the Passenger's convenience, such as, "air transportation, shore excursions, ground tours, ground transportation, ho-

"has paid his fare and boarded the vessel [or otherwise] places himself in the care of the vessel and is accepted as such by the shipowners employees." Such person ceases to be a passenger "when the vessel has reached the point of the passenger's destination and the passenger has left the vessel and the shipowner's dock or premises." *See* MARTIN J. NORRIS, THE LAW OF MARITIME PERSONAL INJURIES § 3:2 (4th ed.1990); *see also* International Convention for the Unification of Certain Rules Relating to the Carriage of Passengers by Sea, Apr. 26, 1961, *reprinted in* 6 BENEDICT ON ADMIRALTY: INTERNATIONAL MARITIME LAW DOCUMENTS AND COMMENTARY 3–11 to 3–18 (Frank L. Wiswall ed., 7th ed.1998) (defining "passenger" as "a person carried in a ship under contract of carriage," and defining "carriage" as the "the period while a passenger is on board the ship, and in the course of embarking or disembarking; but does not include any period while the passenger is in a marine station or on a quay or other port installation.").

tels, restaurants and other similar activities or services," and then limits the Carrier's liability, both on and off the ship, "for any accident or harm to Passenger which occurs off the Vessel or as a result of any acts, omissions or negligence of any independent contractors." [7] Clause 6 similarly limits the Carrier's liability for events which may occur either on board or on shore.[8]

This is not to say that, once a person buys her ticket for a cruise on a Royal Caribbean ship, she is eternally a Passenger bound by the terms and limitations of the ticket contract, even though the contract clearly covers more than just the voyage itself. Thus, if a "Passenger" returns home and is struck by a car driven by a Royal Caribbean executive, the ticket contract would not limit her right to sue the driver and/or his employer. The Sharpes, as Passengers, and Royal Caribbean, as Carrier, entered into a contract memorialized in the booklet accompanying the ticket, the terms of which at minimum bound them during the voyage of the Rhapsody of the Seas that was the subject of the contract. Nothing in the ticket contract prevented the Sharpes from suing the carrier to seek to establish Royal Caribbean's liability for the incident on the WICO dock during the vessel's regular call at St. Thomas. The ticket contract, however, did require the Passengers to file that suit within one year of the incident, as provided in clause 13(b). The Sharpes did not comply with clause 13(b) and their lawsuit against Royal Caribbean is therefore time-barred.[9]

7. The full text of ticket contract clause 5 provides as follows:

> All arrangements made for or by Passenger for air transportation, shore excursions, ground tours, ground transportation, hotels, restaurants and other similar activities or services are made solely for Passenger's convenience and are at Passenger's risk. The providers of such services are independent contractors and are not acting as agents or representatives of Carrier. In no event shall Carrier be liable for any accident or harm to Passenger which occurs off the Vessel or as a result of any acts, omissions or negligence of any independent contractors.

8. The full text of ticket contract clause 6 provides as follows:

> Carrier may for any reason, at any time and without prior notice, cancel, advance, postpone or deviate from any scheduled sailing or port of call, or substitute another vessel or port of call, and shall not be liable for any loss whatsoever to Passenger by reason of such cancellation, advancement, postponement, substitution or deviation. By way of example, and not limitation, Carrier may deviate from any scheduled sailing and may otherwise land Passenger and his property at any port if Carrier believes that the voyage or any Passenger or property may be adversely affected as a result of hostilities, blockages, prevailing weather conditions, labor conflicts, strikes onboard or ashore, breakdown of Vessel, congestion, docking difficulties or any other cause whatsoever.

9. The Court declines plaintiffs' invitation to follow an opinion from another Circuit that the one-year limitation for filing suit only covers incidents occurring while the Passenger is on the vessel, because it is not binding precedent or factually apposite. *See Rams v. Royal Caribbean Cruise Lines, Inc.* 17 F.3d 11 (1st Cir.1994). In *Rams*, a Passenger sued Carrier for personal injury sustained at a hotel owned by Royal Caribbean while on an excursion on shore during a Royal Caribbean cruise; facts which are far different from the circumstances of the Sharpes' case. The Court of Appeals for the First Circuit found that the contract "smelled of the sea" and that the one-year suit limitation applied only while the Passenger was on the ship. It appears that the *Rams* opinion conflates the one-year suit limitation clause with the clause excluding the Carrier from liability for injuries suffered during activities and services provided for the Passenger's convenience at hotels run by independent contractors on shore. The contract's exclusion of the Carrier's liability for incidents off the vessel cannot properly be read to confine the contract's one-year suit limitation to only incidents which happen while the Passenger is on board the vessel. It would seem in *Rams* that Royal Caribbean, as owner of the hotel where the injury took place, was in the position of the independent contractors responsible for their own negligence, and the incident at the hotel had nothing to do with the ticket contract between Rams as Passenger and Royal Caribbean as Carrier operating a cruise ship. The Sharpes' facts are much closer to those of *Berg v. Royal Caribbean Cruises, Ltd.*, 1992

## C. Summary Judgment Will Be Denied with Respect to WICO and Robert Lynch Trucking.

█ Robert Lynch Trucking and WICO[10] move for summary judgment based on the application of clause 13(b)'s one-year time limitation to third parties pursuant to clause 13(d), which reads

THE EXCLUSIONS OR LIMITATIONS OF LIABILITY OF CARRIER SET FORTH IN THE PROVISIONS OF THIS CONTRACT SHALL ALSO APPLY TO AND BE FOR THE BENEFIT OF AGENTS, INDEPENDENT CONTRACTORS, CONCESSIONAIRES AND SUPPLIERS OF CARRIER, AS WELL AS OWNERS AND OPERATORS OF ALL SHORESIDE PROPERTIES AT WHICH THE VESSEL MAY CALL, AS WELL AS OWNERS, DESIGNERS, INSTALLERS, SUPPLIERS AND MANUFACTURERS OF THE VESSEL OR ANY COMPONENT PARTS THEREOF, TOGETHER WITH THE EMPLOYEES AND SERVANTS OF EACH OF THE FOREGOING.

The Court agrees that clause 13(d) is ambiguous when read in the overall context of the contract, because it fails to specify which limitations of liability extend to which third parties and with respect to what sorts of incidents.[11]

Clause 13(d) is simply too broad and cannot mean what it purports to say, namely, that all of the exclusions and limitations which protect Royal Caribbean, as carrier, also protect and apply to independent contractors and shoreside property owners, such as WICO and Robert Lynch Trucking. For example, many limiting clauses of the ticket contract, when applied to these two co-defendants, are either ambiguous or meaningless: clause 2(c) (limiting recovery for loss of or damage to Passenger's property to $300 unless the true value is declared and a 5% fee is paid), clause 2(d) (denying liability for loss of or damage to certain types of property unless deposited with Carrier for safekeeping), clause 3 (denying warranty for, *inter alia*, the fitness of food or drink supplied on board), clause 4 (denying liability for medical treatment, diagnosis, advice, or other services performed on board), clause 5 (denying all liability for occurrences off the vessel), clause 6 (denying liability for scheduling changes), clause 8 (limiting refunds to the terms of the carrier's refund policy), clause 12 (requiring litigation of all disputes before a court in Miami).

Moreover, clause 13(d) does not specify clearly which third parties are to be included. For example, "OWNERS AND OPERATORS OF ALL SHORELINE PROPERTIES AT WHICH THE VESSEL MAY CALL" could include not only facilities such as WICO, where the vessel

WL 609803 (D.N.J.1992) (injury on private beach that was scheduled port of call fell within ticket contract's time-bar, regardless of fact beach owned by Royal Caribbean).

**10.** Co-defendants WICO and Robert Lynch Trucking filed motions supporting and adopting Royal Caribbean's motion for summary judgment.

**11.** The Sharpes further argue that 46 U.S.C. app. § 183b(a), which delimits the extent to which Royal Caribbean may reduce the statute of limitations for bringing suit, does not authorize inclusion of third parties. Section 183b(a) is irrelevant to the application of clause 13(d) to third parties, and thus does not serve as a basis for granting or denying summary judgment with respect to WICO and

Robert Lynch Trucking. Congress' main goal in enacting section 183 was to curb the abuses of shipowners, not the entities mentioned in clause 13(d). *See Schwartz v. S.S. Nassau*, 345 F.2d 465 (2d Cir.1965), *cert. denied*, 382 U.S. 919, 86 S.Ct. 294, 15 L.Ed.2d 234. Section 183b(a) does not authorize conduct, rather it restricts it. Section 183b(a) establishes a floor on time limitations, below which a "manager, agent, master, or owner of [a] vessel" cannot go. *See Order of United Comm. Travelers of America v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947) (in absence of contrary statute, contract provision may validly limit time for bringing action on such contract to period less than that prescribed in general statute of limitations, provided that shorter period itself is reasonable).

actually docked, but also those shoreline properties that have no connection to Royal Carribean other than to be situated on the shoreline near the WICO dock. Just as the Sharpes were not required to substitute WICO and Robert Lynch Trucking in each applicable provision of the ticket contract to see which ones might cover Darla Sharpe's fall, they were not required to guess which third parties were covered by the contract.

The Court construes the ambiguities in the contract against its drafter, Royal Caribbean. Since the contract as a whole, including clause 13(d), did not put the Sharpes on notice of which limitations and exclusions inure to which third parties' benefit, the Court will deny co-defendants' motion for summary judgment.

### III. CONCLUSION

The Court will grant summary judgment and dismiss Royal Caribbean from this action based on the one-year time limitation set forth in clause 13(b). The Court will deny summary judgment to WICO and Robert Lynch Trucking, because clause 13(d) is too ambiguous to cloak them with the limitations and exclusions which Royal Caribbean reserved to itself. The alternative motion for change of venue is denied as moot.[12]

### ORDER

For the reasons set forth in the accompanying memorandum of even date, it is hereby

**ORDERED** that the motion for summary judgment, with respect to Royal Caribbean Cruises, Ltd., is **GRANTED**, and Royal Caribbean Cruises, Ltd., is **DISMISSED** from this suit; it is further

**ORDERED** that the motions for summary judgment for West Indian Co. and Robert Lynch Trucking, are **DENIED**; it is further

**ORDERED** that the motion for change of venue is **DENIED AS MOOT.**

---

12. While the Court does not reach the issue of the validity and enforceability of the forum selection provision of clause 12, the text of that provision does further highlight the ambiguity of applying the exclusions and limitations to third parties. WICO and Robert Lynch Trucking are both citizens of St. Thomas, and Royal Caribbean has its headquarters in Miami, Florida. Thus clause 12 hardly seems to be "for the benefit" of third parties, since Miami is not a convenient forum for co-defendants in this case, and probably would not be enforced as reasonable and fair. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).