Richard FABEND and Margaret Fabend, Plaintiffs,

v.

**ROSEWOOD HOTELS AND RESORTS, L.L.C., Caneel Bay, Inc., and United States of America, Defendants.**

Rosewood Hotels and Resorts, L.L.C., Caneel Bay, Inc., Third-party Plaintiffs,

v.

United States of America, Third-party Defendant.

No. Civ. 1999–155.

District Court, Virgin Islands, D. St. Thomas and St. John.

Jan. 23, 2002.

---

**440**

Vincent A. Colianni, St. Croix, VI, for the plaintiff.

Matthew J. Duensing, St. Thomas, VI, for defendant Rosewood Hotels.

Joycelyn Hewlett, AUSA, St. Thomas, VI, for defendant United States of America.

## MEMORANDUM

MOORE, District Judge.

Defendants and third-party plaintiffs, Rosewood Hotels & Resorts and Caneel Bay, Inc. [collectively "defendants"], move for summary judgment. Plaintiffs Richard and Margaret Fabend [collectively "Fabends" or "plaintiffs"] and third-party defendant United States oppose defendants' motion. For the reasons set forth below, this Court will grant defendants' motion.

## I. FACTS

In February 1999, the Fabends vacationed at the Cinnamon Bay Campground ["Campground"] in the Virgin Islands National Park ["Park"] on St. John, United States Virgin Islands. The Campground is operated by the defendants under a concession agreement with the National Park Service ["NPS"]. Richard Fabend was seriously injured while body surfing within the Park boundaries in a swimming area designated by the NPS adjacent to Cinnamon Bay Beach and near the Campground. For additional facts, *see Fabend v. United States,* 174 F.Supp.2d 356 (D.Virgin Islands 2001). He has sued the defendants for breaching their innkeepers' duty to protect their guests from unreasonable risks of harm. The defendants assert that they owed the plaintiff no such duty to warn because he was injured while away from their premises in an area they do not control.[1] This Court has jurisdiction over this diversity action against these defendants pursuant to section 22(a) of the

---

1. Defendants assert other grounds for granting their motion for summary judgment, namely that they are not liable because the dangers were known, open and obvious to plaintiffs; plaintiffs assumed the risk; and Virgin Islands public policy precludes this lawsuit. The first two grounds are questions of fact best left to a jury. The final ground, on the other hand, requires a touch more analysis. Defendants rely on 12 V.I.C. § 401, the Open Shorelines Act, which states in part that "[i]t is the intent of the Legislature to preserve what has been a tradition and to protect what has become a right of the pub-

Revised Organic Act of 1954[2] and 28 U.S.C. § 1332.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue respecting any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Sharpe v. West Indian Co., 118 F.Supp.2d 646, 648 (D.Vi.2000). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror could find for the non-movant. See Saldana v. Kmart Corp., 42 V.I. 358, 360–61, 84 F.Supp.2d 629, 631–32 (D.Virgin Islands 1999), aff'd in part and rev'd in part, 260 F.3d 228 (3d Cir.2001). Only evidence admissible at trial shall be considered and the Court must draw all reasonable inferences therefrom in favor of the nonmovant. See id.

### B. Innkeeper's Duty Extends only within Its "Sphere of Control"

Section 314A(2) of the Restatement (Second) of Torts states that an innkeeper is under a duty to protect its guests from unreasonable risks of harm. This duty, however, is limited by comment c, which notes that no duty is owned when a guest is away from the premises. In Manahan v. NWA, 821 F.Supp. 1105 (D.Vi.1991), this Court held that a hotel has a duty "to take reasonable steps to minimize risks that are foreseeable to its guests when they are reasonably within its sphere of control." Manahan, 821 F.Supp. at 1109 (adopting the "sphere of control" approach of Banks v. Hyatt Corp., 722 F.2d 214 (5th Cir. 1984)).[3] The defendants argue that the designated swimming area and its adjacent beach were not and are not within its sphere of control as they do not own or control either. Both the government and plaintiffs would find evidence of the defendants' possessory interest in the beach from the concession agreement and other factors. I therefore will first address the terms of the concession agreement and then the various factors offered by the plaintiffs to bring the site of the injury within the defendants' sphere of control.

### 1. Concession Agreement Between the NPS and Defendants

■ Caneel Bay, Inc. and the NPS signed a concession agreement in 1970

lic." Defendants interpret this legislation to protect adjacent property owners from unwarranted tort claims—by encouraging beach access, adjacent property owners cannot be held liable for the actions of individuals who cannot be controlled or excluded from the beaches. Although certainly a novel approach, this argument is actually tied to the main issue of this motion—whether defendants controlled the adjacent beach area and thus owed plaintiffs a duty. As I find that the defendants did not control the adjacent beach area, I need not address their public policy argument.

**2.** 48 U.S.C. § 1612(a). The complete Revised Organic Act of 1954 is found at 48 U.S.C.

§§ 1541–1645 (1995 & Supp.2001), reprinted in V.I. CODE ANN. 73–177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

**3.** The Fifth Circuit in Banks stated that "if an innkeeper has sufficient control of property adjacent to his premises so that he is capable of taking reasonable actions to reduce the risk of injury to guests present on the adjacent property, the innkeeper should not be immune from liability when his failure to take such actions results in an injury to a guest." Banks, 722 F.2d at 226–27.

which is still in effect, having been amended several times and extended past its original twenty years. In 1993, Caneel Bay hired Rosewood Hotels & Resorts to manage the Cinnamon Bay campground. Plaintiffs' claim that the concession agreement demonstrates that defendants exercised pervasive control over the beach area simply is not supported by even a cursory reading of the agreement.

By its plain terms, the agreement gives defendants no control over the swimming area, the access to the beach, or the beach itself. The agreement required the defendants to construct certain improvements, *e.g.*, beach cottages, tent sites, hospitality center with commissary, comfort stations and 100–seat restaurant, without designating where these facilities were to be placed. (*See* Concession Agreement § 1(b)(1); Defs.' Ex. 2 at RF/RH 00037.) The amended agreement gives the defendants a right to (1) rent tropical beach cottages and tent camping sites, (2) sell and rent camping, swimming, and related equipment and supplies, (3) run day-sail charter boat excursions, rent scuba and snorkeling equipment and other related water oriented activities, (4) sell general merchandise, including food, beverages, souvenirs and curios, and (5) operate any and all facilities and services that are customary in connection with such operations. (*See id.* § 2(a)(1)-(5) at RF/RH 00040.) The agreement provided for the assignment of pieces of land for use by the defendants, but no evidence of such assignments has been provided. (*See id.* § 4 at RF/RH 00040.)

The defendants have no possessory interest in any buildings and improvements provided by the NPS; they only have the right to occupy and use these improvements. (*See id.* § 4(d) & (e) at RF/RH 00042.) The only possessory interest the agreement gives the defendants is in the physical improvements constructed by the defendants. (*See id.* § 5(b) at RF/RH 00043.) The clear intent of the concession agreement is and was to provide for the "enjoyment of the [Park] in such manner and by such means as will leave such park unimpaired for the enjoyment of future generations" and for the defendants to establish and operate certain additional facilities and services for the public visiting the park "under the supervision of the [NPS] ...." (*See id.* at RF/RH 00036.) The agreement stipulates that the defendants have only "a preferential right, not an exclusive or monopolistic right, to provide public accommodations, facilities and services" at the Campground. (*See id.* § 16 at RF/RH 00053.)

Accordingly, this concession agreement by itself gives defendants no sphere of control over the beach or the designated swimming area where plaintiff suffered his injuries.

### 2. Plaintiffs' Other Factors

 After reviewing the various factors offered by the plaintiffs to bring the site of the injury within the defendants' sphere of control, I find that only one factor bears discussion, namely, the defendants' water-related activities.[4] Under the concession

---

**4.** Plaintiffs' other factors clearly do not bring plaintiff's injuries within the defendants' sphere of control. For example, I do not reach plaintiffs' contention that defendants asserted control by maintaining and cleaning up the beach because plaintiffs point to no evidence, other than possibly providing garage cans and occasionally picking up loose

trash, to support their assertion. (Richardson Dep. at 27; Varlack Dep. at 20.) These isolated incidents clearly cannot bring the beach within defendants' sphere of control. Plaintiffs' argument that defendants' asserted control through security measures to keep people off Cinnamon Bay Beach similarly fails. While defendants can keep people from com-

agreement, defendants operate a gift shop and watersports center on or near the beach. Through these operations, defendants sell beach supplies, swimsuits, gifts, etc., rent to the public snorkeling equipment, beach chairs, kayaks, windsurfers and sailboats, and offer to the public boat tours and snorkeling, kayaking, and sailing lessons. Defendants' employees made sporadic efforts to keep boaters and other non-swimmers out of the designated swim area. (Metcalfe Dep. at 9–10; Rabsatt Dep. at 42.) The Fabends argue that these water-related activities are sufficient to bring the beach and swim areas within the defendants' sphere of control.

I find plaintiffs' argument unpersuasive. First, only the NPS has authority to designate, for the specific activity of swimming, the area of the water in which Richard Fabend was injured. *See* 36 C.F.R. § 1.5(a)(2) (stating that the NPS may designate an area for a specific use or activity). Second, the concession agreement requires the defendants to follow NPS rules to help keep boats out of the designated swimming area, which was what these employees were doing, without delegating any enforcement authority to sanction violators. (*See* Concession Agreement § 22; Defs.' Ex. 2 at RF/RH 00055.) Third, plaintiffs concede that Richard Fabend was not using or wearing anything purchased or rented from defendants at the time of his body-surfing accident. Thus, the defendants' water-related operations had nothing to do with Richard Fabend's unfortunate accident and were at most only tangentially or collaterally related to plaintiffs' injuries.[5]

Accordingly, as plaintiffs fail to establish that the beach was under defendants' sphere of control, defendants owed the Fabends no duty to warn of the dangers of shore-breaking waves. Therefore, I will grant summary judgment in favor of defendants.[6]

---

ing onto the Campground from the road after-hours, and thereby incidentally limit access to the beach from the land, they are prohibited from restricting such access from the water or through other adjacent areas. *See* 12 V.I.C. § 402 ("It is hereby declared and affirmed that the public, individually and collectively, has and shall continue to have the right to use and enjoy the shorelines of the United States Virgin Islands ...."); *id.* § 403 ("No person, firm, corporation, association or other legal entity shall create, erect, maintain, or construct any obstruction, barrier, or restraint of any nature whatsoever upon, across or within the shorelines of the United States Virgin Islands ...."). Finally, plaintiffs' claim that defendants' advertisement including the statement that "on property is our 1/2 mile long white sandy beach" constitutes an admission of control is too specious to deserve any comment other than it establishes no more control over the beach than a statement inviting the public to "enjoy our gentle trade winds" would establish control over the wind.

**5.** Plaintiffs rely on several Florida decisions, most prominently a recent ruling of the Third District Court of Appeal of Florida in *Poleyeff v. Seville Beach Hotel,* 782 So.2d 422 (Fla. Dist.Ct.App.2001). The court found a hotel and a rental business not liable to the estates of two drowning victims for failing to warn of dangerous rip currents in the sea adjacent to their businesses because the defendants' businesses were only "tangentially or collaterally" related. The court in passing noted that a "duty might arise ... if the defendant had rented a water craft for use in an area of the ocean in which it was aware [of the danger.]" *Id.* at 424 n. 4. I reject plaintiffs' attempt to parlay this rank dicta from another jurisdiction to a rule that the defendants here have a duty to warn their guests about shore-breaking waves simply because they sell to the public water-related items and rent to the public water craft and snorkeling gear.

**6.** Defendants describe their motion as one for partial summary judgment on plaintiffs' negligence claims. As my ruling in favor of the defendants on the negligence claim moots the plaintiffs' remaining claims against Rosewood Hotels & Resorts and Caneel Bay, Inc. for loss of consortium and punitive damages, I

### III. CONCLUSION

Plaintiffs fail to establish that defendants had any control over the beach area and adjacent Park waters where Richard Fabend was injured. As an innkeeper owes no duty to protect or warn its guests against dangers outside of its sphere of control, I must grant defendants' motion for summary judgment and dismiss them from the case.

### ORDER

For the reasons set forth in the foregoing Memorandum of even date, it is hereby

**ORDERED** that defendants' motion for summary judgment (Docket # 216) is **GRANTED.**

have treated defendants' motion as one for summary judgment on all counts.