Donald J. KILBY and Joann Kilby,
his wife, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. CIV. A. 99–278 ERIE.

United States District Court,
W.D. Pennsylvania.

May 2, 2001.

James D. McDonald, McDonald Group, Erie, PA, for plaintiffs.

Jessica Lieber Smolar, U.S. Attorney's Office, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Plaintiffs commenced this lawsuit after Donald J. Kilby was struck by a dead tree and consequently rendered a paraplegic while removing trees from the Bradford Ranger District of the Allegheny National Forest under a contract with the United States Forest Service ("Forest Service"). On April 28, 2000, this Court dismissed Plaintiff Joann Kilby's loss of consortium claim brought pursuant to the Federal Tort Claims Act ("FTCA") for failure to exhaust. 28 U.S.C. § 2671 *et seq.* Presently pending is Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment [Doc. No. 20] with respect to Plaintiff Donald J. Kilby's negligence claims also brought pursuant to the FTCA. The government argues that this Court lacks subject matter jurisdiction because Plaintiff's claims fall within the discretionary function exception to the FTCA. 28 U.S.C. § 2680(a). In the alternative, the government argues that it owed no duty to Kilby under Pennsylvania law. For the reasons stated below, we will grant the government's motion to dismiss on the basis that the discretionary function exception applies to all of Kilby's claims. We therefore do not reach the issue of duty under Pennsylvania law.

### I. BACKGROUND

The contract involved in this case was for the "site preparation" of the Bradford Ranger District of the Allegheny National Forest. Declaration of William D. Millard, Director of Procurement and Property Management for the United States Forest Service, U.S. Department of Agriculture, Eastern Region, Ex. A to Defendant's Brief in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment, at ¶ 7. The "preparation" consisted of removing, by chainsaw, striped maple and beech brush that was interfering with the natural regeneration of hardwood trees. *Id.* On November 30, 1995, the Forest Service issued a copy of the solicitation to all prospective quoters, including Kilby. Def's. Brief at 8. John D. McHenry served as the contracting officer for the Forest Service in connection with this solicitation. *Id.; see also* Complaint ¶ 10. McHenry stated that he reviewed the bids and determined, within his discretion, what he considered to be reasonable prices; he also stated that he made a positive responsibility determination in which he considered each bidder's capacity, credit, integrity, and perseverence. Declaration of John D. McHenry, Ex. C to Def's. Brief at ¶ 6. McHenry stated that he selected Kilby from approximately ten other bidders because of Kilby's personal responsibility, expertise, availability and the amount of his bid. *Id.* Kilby testified that he felt qualified to perform the work described in the contract, considered himself to be a professional logger, and possessed all the equipment necessary to perform the job. Kilby Dep., Ex. E to Def's. Brief at 56. He also testified that he had no difficulty understanding the contract documents. *Id.* at 55–56.

On January 17, 1996, Robert Luke, the contracting officer representative ("COR"), met with Kilby and reviewed the contract. Dec. of McHenry at ¶ 10. Safety, the importance of working in pairs, and the use of personal protection equipment was stressed at this meeting. *Id.* Luke also made periodic inspections of the site during the contract period to ensure that the work was progressing. *Id.* at ¶ 12. He did not supervise the day-to-day operations of Kilby's work. *Id.* In part, Kilby's contract provided:

> Clause 52.222–41 *Service Contract Act of 1965, as Amended*
>
> (*h* ) *Safe and Sanitary Working Conditions.* The Contractor or subcontractor

shall not permit any part of the services called for by this contract to be performed in buildings or surroundings or under working conditions provided by or under the control or supervision of the Contractor or subcontractor which are unsanitary, hazardous, or dangerous to the health and safety of the service employees. The Contractor or subcontractor shall comply with the safety and health standards applied under 29 CFR Part 1925.

Clause 52.236–6 *Superintendence by the Contractor*

At all times during performance of this contract and until the work is completed and accepted, the Contractor shall directly superintend the work or assign and have on the worksite a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor.

Clause 53.236–7—*Permits and Responsibilities*

The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work. The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

Attachment 1 to Ex. C to Def's. Brief.

Kilby's contract applied to eleven different wooded areas covering 208 acres. Dec. of McHenry at ¶ 7. On April 12, 1996, Kilby entered the eleventh area and commenced cutting. Complaint ¶ 14. At approximately 12:00 p.m. on this day, Kilby was struck in the back of the head by a dead tree, believed to have been a hard maple. *Id.* at ¶ 17. As a result of this blow, Kilby suffered an injury to his right eye, a broken jaw, and an injury to his spinal cord that rendered him a paraplegic. *Id.* at ¶ 19. Kilby alleges that the government was negligent in the following respects:

(a) In failing to warn Plaintiff Donald J. Kilby of the danger of the unique and peculiar risk posed by the dead trees in the area to be selectively cut by him on April 12, 1996;

(b) In failing to make the area to be selectively cut on April 12, 1996 safe for the designated selective cutting by removing all dead trees prior to commencement of Plaintiff Donald J. Kilby's work;

(c) In failing to provide, either directly or through others, proper machines or equipment for the removal of all dead trees which constituted a danger to Plaintiff Donald J. Kilby while performing the selective cutting in the designated areas;

(d) In failing to properly inspect the area for dead trees that would pose and did in fact pose a hazard to the Plaintiff, Donald J. Kilby;

(e) In failing to cut all dead trees in the area before assigning Plaintiff Donald J. Kilby to enter the area;

(f) In failing to comply with appropriate safety standards which either are directly applicable or otherwise evidence a standard of due care and constitute industry standards;

(g) In failing to comply with safety standards promulgated by an agency of the Defendant and which the Defendant compels, directs and enforces private cit-

izens to observe and thereby failing to comply with its own rules; and

(h) In being otherwise negligent.

*Id.* at ¶ 18. As stated previously, the government argues that this Court lacks subject matter jurisdiction because Kilby's claims are barred by the discretionary function exception to the FTCA. 28 U.S.C. § 2680(a). In the alternative, the government argues that this court lacks subject matter jurisdiction because no duty was owed to Kilby under Pennsylvania law.

## II. STANDARD OF REVIEW

■■■■ A motion to dismiss under Rule 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. *Mortensen v. First Federal Savings and Loan,* 549 F.2d 884, 891 (3d Cir.1977). A motion which makes a facial challenge to a complaint requires that the court consider the allegations of the complaint as true and make all reasonable inferences in plaintiff's favor. *Id.* In the case of a factual challenge to the complaint, however, the court is free to consider and weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to "satisfy itself as to the existence of its power to hear the case." *Id.* In resolving a factual 12(b)(1) motion, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude

the court from evaluating the merits of the jurisdictional claims. *Id.* In the instant motion, the government raises a factual jurisdictional challenge based on the discretionary function exception to the FTCA. 28 U.S.C. § 2680(a). In this circuit, it is the government's ultimate burden to prove the applicability of the discretionary function exception. *Cestonaro v. United States,* 211 F.3d 749, 756 n. 5 (3d Cir. 2000).[1]

## III. DISCUSSION

"The [FTCA] is a partial waiver of sovereign immunity that would otherwise protect the United States from tort liability stemming from the actions of its employees." *Cestonaro,* 211 F.3d at 752–53. The purpose of the Act is to make the federal government liable "in the same manner and to the same extent as a private individual under like circumstances." *Id.* (quoting 28 U.S.C. § 2674). The breadth of the waiver, however, is curtailed by a number of exceptions. The relevant exception for our purposes, the "discretionary function exception," provides that immunity is not waived with respect to:

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance

---

**1.** As a general matter, it is the plaintiff's burden in a factual 12(b)(1) challenge to prove that subject matter jurisdiction exists. *Mortensen v. First Federal Savings and Loan,* 549 F.2d 884, 891 (3d Cir.1977). The Third Circuit has not discussed the relationship of the plaintiff's burden under Rule 12(b)(1) and the government's burden to prove the applicability of the discretionary function exception. Other circuit courts that have held that it is the government's burden to prove that the exception applies, however, have found that the government's burden arises only if the plaintiff first pleads matters that are facially

outside the FTCA's exceptions. *Prescott v. United States,* 973 F.2d 696, 701 (9th Cir.1992), *Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982); *Stewart v. United States,* 199 F.2d 517, 520 (7th Cir.1952). It is our understanding that the Third Circuit adopted this approach in Cestonaro. In this instance, we find that Kilby has met his burden of pleading matters facially outside the FTCA's exceptions. We therefore shift the burden to the government to prove the applicability of the discretionary function exception in this instance.

or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

The FTCA does not define the term "discretionary function," and as a result, a substantial body of case law has developed on the issue. The most recent statement of the two-pronged analysis adopted by the Supreme Court is set forth in *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). With respect to the first prong, the Court provided:

> [t]he [discretionary function] exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," ... and "it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies ... The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive."

*Id.* at 322, 111 S.Ct. 1267 (internal citations omitted). In the event the first prong of the analysis is satisfied, then:

> ... it remains to be decided "whether that judgment is of the kind that the discretionary function exception was designed to shield." ... Because the purpose of the exception is to "prevent judi-

cial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," ... when properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy."

*Id.* at 322–23, 111 S.Ct. 1267 (internal citations omitted). In this case, Kilby complains of a number of Forest Service actions. We apply the two-pronged analysis to each action in turn.

### A. Failure to Warn

■ Kilby's first claim is that the government was negligent in failing to warn him of the danger posed by the dead trees in the area covered by his contract. Complaint ¶ 18(a). He argues that the Forest Service Manual, the Contract Administration Handbook, and Occupational Safety and Health Act ("OSHA") regulations required the Forest Service to warn him of the danger of dead trees. The Forest Service Manual provides, in relevant part:

> *6715—CONTRACTOR, COOPERATOR, AND PERMITTEE SAFETY AND HEALTH.* Contractors, cooperators, and permittees are covered under Federal OSHA and State safety requirements. If these personnel operate in violation of applicable safety requirements, notify the appropriate agency for enforcement action.
>
> The Forest Service has a responsibility to identify unusual hazards and to require the contractor to minimize hazards through contract or permit specifications.

Forest Service Manual § 6715 (effective 4/8/93), Pl's App. at 221a. Section 23 of the Contract Administration Handbook provides, in relevant part:

> The COR shall:

1. Advise the contractor of any potentially hazardous conditions at or near the project site.

2. Advise contractors that Occupational Health and Safety Administration regulations, as well as the contract, impose the responsibility upon them to ensure that their employees' working conditions are not unsanitary, hazardous, or dangerous to their health and safety.

Contract Administration Handbook 6309.11 § 23.1 (effective 1/31/91), Pl's App. at 890a. The OSHA regulation cited by Kilby provides "[i]f the danger tree is not felled or removed, it shall be marked and no work shall be conducted within two tree lengths of the danger tree ..." 29 C.F.R. § 1910.266(h)(1)(vi). The regulation defines a "danger tree" as a "standing tree that presents a hazard to employees due to conditions such as, but not limited to, deterioration or physical damage to the root system, trunk, stem or limbs, and the direction and lean of the tree." 29 C.F.R. § 1910.266(c).

We do not find that any of these provisions imposed a mandatory duty on the Forest Service to warn Kilby of the dangers posed by dead trees. The broad safety provisions of the Forest Service Manual and the Contract Administration Handbook plainly do not mandate that Forest Service employees warn contractors of the dangers of naturally occurring dead trees. On this point, *Rosebush v. United States*, 119 F.3d 438 (6th Cir.1997), is instructive. In this case, plaintiffs argued that a Forest Service Manual provision directing Forest Service employees, "[t]o the extent practicable, eliminate safety hazards from recreation sites," and "[i]mmediately correct high-priority hazards that develop or are identified during the season or close the site" required the employees to warn plaintiffs that a fire pit was hazardous and

to correct the hazard. *Id.* at 441. The court rejected this argument, stating:

> None of the guidelines plaintiffs cite requires that a fire pit be maintained or designed in any way ... There are no regulations requiring the Forest Service to warn of the dangers of a fire pit, nor that classify the pit as a "high priority hazard" requiring correction.

> The controlling statutes, regulations, and administrative policies did not mandate that the Forest Service maintain its campsites in any specific manner. Accordingly, the conduct of the Forest Service in making these decisions was within the discretionary function exception to the FTCA's waiver of immunity.

*Id.* at 442. Several other circuit courts have similarly concluded that broad mandates do not remove discretion from government employees. *See, e.g., Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) (Forest Service Accident Plan mandate that its pilots be provided with "human factor training" did not require that they be provided with a specific type of CRM training); *Duke v. Dep't of Agriculture*, 131 F.3d 1407, 1410 (10th Cir.1997) (Forest Service manuals emphasizing safety were not specific enough to eliminate discretion of employees with respect to conduct in specific instances); *Autery v. United States*, 992 F.2d 1523, 1528–29 (11th Cir.1993), *cert. denied*, 511 U.S. 1081, 114 S.Ct. 1829, 128 L.Ed.2d 458 (1994) (National Park Service policy mandating that employees make every effort to recognize and report hazardous trees prescribed no specific method for inspecting trees). The rationale of these cases is also applicable to the instant case. Because neither the Forest Service Manual nor the Contract Administration Handbook specified the conditions Forest Service employees should consider to be unusually or poten-

tially hazardous, their conduct in making these determinations was discretionary.

█ The OSHA regulations cited by Plaintiff do not apply to the Forest Service. Initially, it is clear from the terms of Kilby's contract as well as from the provision of the Contract Administration Handbook cited above, that the obligation to comply with OSHA applied to contractors such as Kilby, and not to the Forest Service. Furthermore, OSHA's definition of "employer" expressly excludes the United States.[2]

In addition to being discretionary, we also find that the conduct at issue is "of the kind that the discretionary function exception was designed to shield," and therefore satisfies the second prong of the analysis. *Gaubert* at 322–23, 111 S.Ct. 1267. The Forest Service contracts for tree-removal services because it permits the agency to reduce manpower commitments, use its limited resources for other activities, and utilize the contractors' special expertise. Dec. of Millard, Ex. A to Def's. Brief at ¶ 8. In determining the nature and specifications of individual contracts, the agency considers things such as forest management and silvicultural practices as well as budgetary and staffing considerations. *Id.* In *Layton v. United States,* 984 F.2d 1496, 1504 (8th Cir.1993), *cert. denied,* 510 U.S. 877, 114 S.Ct. 213, 126 L.Ed.2d 170 (1993), the Eighth Circuit concluded under similar facts that the decision of the Forest Service as to whether it would issue warnings of the dangers of felling trees to tree-removal contractors was policy-based:

> [t]he decision as to whether or not to issue warnings is susceptible to policy analysis, since it involves balancing poli-

cy against cost: the more effort the Forest Service expended to discover dangers and to warn contractors of them, the greater the safety the benefit but also the greater the cost to the government ... Even if Forest Service personnel failed to issue appropriate warnings to the contractors, plaintiffs' claim based on this failure is barred by the discretionary function exception.

*Id.* (internal citations omitted). In light of the above, we conclude that Kilby's failure to warn claim is jurisdictionally barred by the discretionary function exception to the FTCA.

### B. Failure to Make Safe

█ Kilby's second argument is that the Forest Service was negligent in failing to make the contract area safe by inspecting for, cutting and removing dead trees before he commenced work. Complaint ¶¶ 18(b), 18(d), and 18(e). Kilby argues that the Forest Service was under a mandatory duty to perform this function by reason of 29 C.F.R. § 1910.266(h)(1)(vi), an OSHA regulation which provides that "[e]ach danger tree, including lodged trees and snags, shall be felled and removed using mechanical or other techniques that minimize employee exposure before work is commenced in the area of the danger tree." *Id.* As stated previously, Kilby's contract expressly provided that compliance with OSHA regulations was the *contractor's* responsibility and, moreover, OSHA regulations do not apply to the federal government because it is not an "employer" under the Act. Thus, under the first prong of the analysis, no mandatory statute, regulation, or policy required Forest Service employees to inspect for, cut,

---

**2.** OSHA defines "employer" as a "person engaged in a business affecting commerce who has employees, *but does not include the United States* (not including the United States Postal Service) or any State or political subdivision of a State." 29 U.S.C. § 652(5) (emphasis added).

or remove dead trees in Kilby's work area, and their decision to not perform this function was discretionary.

We also find that the decision of the Forest Service to not inspect for, cut, or remove dead trees was policy-based, and therefore satisfies the second step of the analysis. The Forest Service does not cut down dead trees because of wildlife preservation concerns, as well as concerns relating to the allocation of government funds and manpower. Millard Dec., Ex. A. to Def's Brief, at ¶ 15. Standing dead trees serve as the roost and maternity sites for the endangered Indiana bat, and are also a source of insects and other invertebrates that are food sources for overwintering birds. *Id.* Furthermore, the decision implicates significant cost considerations. Trees die for various reasons every day, and the continual inspection for and/or removal of dead trees would require a significant commitment of Forest Service manpower. *Id.*

### C. Failure to Provide Equipment

■ Kilby's third argument that the Forest Service was negligent in failing to provide him with proper equipment for the removal of dead trees is without merit. Complaint ¶ 18(c). There is no statute, regulation, or policy mandating that the Forest Service provide independent contractors with such equipment, and the agency's decision in this regard was therefore discretionary. We also find that the decision was policy-based so as to satisfy the second prong of the analysis. The Forest Service contracts for forestry services because this practice permits the agency to use its limited resources for other activities and to utilize the special expertise possessed by independent contractors. Millard Dec. ¶ 8. The decision as to whether the contractors would be required to furnish their own equipment is a particular component of the overall contract that directly implicates the agency's resource concerns.

### D. Failure to Comply with Safety Standards

■ Kilby's argument that the Forest Service was negligent in failing to comply with "safety standards and rules" challenges conduct no different from that already discussed. Complaint ¶¶ 18(f), 18(g). In relevant part, Kilby's brief provides:

> ... the Forest Service Manual directly mandates that OSHA regulations apply to contractors. As shown in sections IIIA.2.c.(1) and d. of this brief, the Defendant failed to follow the mandatory requirements of these regulations with respect to warning of dead trees or removing the dead trees.
>
> Additionally, even if this court finds that the Forest Service Manual, the Contract Administration Handbook, and the OSHA regulations were not mandatory, the Defendant has failed to set forth any policy reason for failing to follow these regulations ...

Pl's Brief at 33. We have already discussed the Forest Service Manual and OSHA provisions cited by Plaintiff in the context of failure to warn and failure to remove dead trees, and find it unnecessary to exhaustively repeat these discussions presently. The Forest Manual provision, as earlier determined, imposed no mandatory duty on the Forest Service to warn of dead trees. The OSHA regulations, also as earlier determined, mandated that the *contractor* provide a safe working environment and not that the Forest Service do so. In this instance, therefore, there was no statute, regulation, or policy that mandated that the Forest Service comply with any "safety standards or rules" cited by Kilby, and its decision to place safety responsibility on the contractors themselves was therefore discretionary. This decision was also policy-based because it involved

the balancing of safety against cost. The greater the effort expended by the Forest Service in making the independent contractors' working conditions safe by, *i.e.,* discovering the existence of dead trees and issuing warnings, the greater the cost to the government. Millard Dec. ¶ 13; *see also Layton v. United States,* 984 F.2d 1496, 1504 (8th Cir.1993), *cert. denied,* 510 U.S. 877, 114 S.Ct. 213, 126 L.Ed.2d 170.

### IV. CONCLUSION

For the reasons stated above, we find that all of the complained-of actions in this case fall within the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), and therefore will grant the government's Motion to Dismiss. We acknowledge that Kilby, in addition to his specific negligence claims, also sets forth a catch-all claim that the government was "otherwise negligent." Complaint ¶ 18(h). Kilby has failed, however, to identify any other conduct on the part of the Forest Service that could serve as the basis for a negligence claim, has exclusively focused his arguments on the conduct addressed in the instant opinion, and has clarified that he does not challenge either the award of the contract in general or the selection of the contractor in particular. Pl's Brief at 9. We therefore cannot conclude from the evidence that any other Forest Service conduct exists to give this Court subject matter jurisdiction over this matter. An appropriate order follows.

### ORDER

AND NOW, this day of May, 2001, for the reasons stated in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Doc. No. 20] is GRANTED.