**Nancy ELDER and Jeffrey
D. Eggertz, Plaintiffs,**

**v.**

**UNITED STATES of America,
Defendant.**

**No. 2:99CV241K.**

United States District Court,
D. Utah,
Central Division.

May 24, 2001.

Kathryn Collard, Law Firm of Kathryn Collard LC, Salt Lake City, UT, for plaintiffs.

Carlie Christensen, Jeffrey E. Nelson, U.S. Attorney's Office, Salt Lake City, UT, for defendant.

**ORDER**

KIMBALL, District Judge.

This matter is before the court on Defendant United States of America's Motion

---

for Summary Judgment, Plaintiffs' Cross Motion for Partial Summary Judgment, and Defendant's Motion to Strike Plaintiffs' Cross Motion for Partial Summary Judgment. The motions came on for hearing on Wednesday, May 16, 2001. Defendant was represented by Jeffrey E. Nelson and Plaintiffs were represented by Kathryn Collard. Oral argument was heard and the motions were taken under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the parties' motions. Now being fully advised, the court enters the following order.

## BACKGROUND

Plaintiffs have brought a wrongful death case against the government under the Federal Tort Claims Act. Their 12–year-old son, Tyler Eggertz, died when he fell off a ledge at the Middle Emerald Pools in Zion National Park. Plaintiffs allege that the National Park Service officials in Zion National Park (1) failed to give adequate warning of the danger of falling at the Middle Emerald Pools, (2) failed to provide adequate guards, barriers, or equipment to prevent visitors from falling over the ledge; and (3) failed to supervise, restrain and protect Tyler Eggertz from slipping at the Middle Emerald Pools.

In March 1997, Tyler Eggertz went to Zion National Park with several members of his family. While most of the group was still at the Lower Emerald Pools area, Tyler and his 15–year-old sister Brittany and 14–year-old cousin Matt walked ahead of the group to the Middle Emerald Pools. Tyler, Brittany and Matt walked to the Heaps Creek area of the Middle Emerald Pools, left the trail, and walked onto the sandstone where the stream flows over the ledge. Tyler attempted to cross the stream when he slipped and fell to his hands and knees. He began to slip backward and fell over the ledge.

Since 1968, there have been four people fall to their deaths from that area of the Middle Pools. The prior accidents occurred in 1968, 1983, and 1984. After each fall there has been a board of inquiry to evaluate the circumstances of the accidents and to recommend potential safety improvements. The park superintendent considers the recommendation of the board of inquiry and determines which recommendations to implement. In making those decisions, the superintendent considers the effectiveness and practicality of the recommendations, preservation of park resources and the natural environment, preservation of park visitors' enjoyment of the environment, and the cost of the suggested modification. The modifications that resulted from those boards of inquiry primarily consisted of changes and additions to signs placed along the Emerald Pools trail. In 1995, the Zion's Park officials looked at issues relating to the Emerald Pools trail. In addition to evaluating the signs, the officials considered some sort of device or barrier at the Middle Pools. The officials decided against a barrier or device because of the canyons propensity for flash floods that would wash away or destroy any barrier and the concern that drilling into the sandstone could weaken the ledge and increase the danger. Zion officials also considered the effect the proposed modification would have on their ability to preserve the park's natural and scenic qualities.

On the date of Tyler's death there were warning signs along the trail leading to the Heaps Creek area where Tyler fell. In addition to trail markers, the various signs stated: "Stay on trail. Caution. Near the edge footing can be dangerous"; "Danger–Cliff. Slippery Sandstone, Unstable rock

edge. Wet rock hazardous"; "Caution. Near the edge footing can be dangerous"; and "Caution. All three Emerald Pools and connecting creeks are closed to swimming, bathing, and wading." Off of the trail and near the ledge where Tyler fell there were signs embedded into the sandstone with the warning "Danger beyond this point." Since Tyler's death, Zion has put in a chain to keep visitors out of the area and some signs have been changed.

## DISCUSSION

The government is moving for summary judgment on the grounds that the discretionary function exception to the Federal Tort Claims Act bars Plaintiffs' Complaint. Plaintiff is moving for partial summary judgment, claiming that undisputed facts demonstrate that Zion National Park officials were negligent. The government has moved to strike Plaintiff's cross motion on the grounds that it was filed four months after the dispositive motion cutoff.

The government claims that Plaintiffs' wrongful death claims should be dismissed for lack of subject matter jurisdiction under the discretionary function exception to the Federal Tort Claims Act. The government claims that the decisions made by Zion management that form the basis for plaintiffs' claims are discretionary acts for which the United States has retained its sovereign immunity.

The discretionary function exception provides that immunity is not waived for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception demonstrates a congressional intent to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through" a tort action. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). "Factual issues regarding negligence are irrelevant to the threshold issue of whether the officials' actions" fall within the exception. *Johnson v. United States*, 949 F.2d 332, 340 (10th Cir.1991). Therefore, the application of the discretionary function exception is a threshold jurisdictional issue that precedes any negligence analysis.

In determining the application of the discretionary function exception, the Tenth Circuit applies a two-step test articulated in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, a court must consider whether the challenged conduct "is a matter of choice for the acting employee" or whether it involves a "federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow." *Id.* at 536, 108 S.Ct. 1954. "If the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect." *Id.* Second, the court must determine if the government action or inaction "is of the kind that the discretionary function exception was designed to shield." *Id.* The exception protects those discretionary actions or decisions that are "based on considerations of public policy" that are "grounded in social, economic, and political policy." *Id.* at 537, 108 S.Ct. 1954.

There are several statutes, regulations, and policies relevant to this analysis. A review of these policies demonstrate that Zion Park officials are invested with discretion in determining how to best warn and deal with hazards. The implementation of these policy directives is left to the

 

discretion of the Park Service and Zion Park officials at the operations level. Therefore, the conduct challenged by Plaintiffs is in fact discretionary.

As to the second element in the analysis, it is clear that the Zion Park officials and Park Service employees must balance many competing interests in their determination on how to warn and deal with hazards, including visitor safety, visitor access, conservation, resource allocation, and scenic preservation. The case before the court is not a situation where the government has failed to do anything, rather it is a challenge regarding how best to warn of the hazard. In this situation, this court concludes that the Zion Park officials' weighing of competing interests as to the appropriate method of warning and protecting visitors from the hazard involves considerations grounded in public policy that were intended to be shielded from judicial second-guessing.

Furthermore, the fact that a chain was put in after Tyler's death is irrelevant to the court's determination as to the application of the discretionary function exception. The First Circuit has appropriately recognized that "the only thing the later action evinces is that the Park Service made a subsequent policy decision to elevate safety over aesthetics. An agency that has discretion to make policy choices can change its view as to the proper balance of relevant concerns as time passes and experience accrues." *Shansky v. United States*, 164 F.3d 688, 695 (1st Cir. 1999).

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment based upon the discretionary function exception is GRANTED. Accordingly, Plaintiffs' Cross Motion for Partial Summary Judgment and Defendant's Motion to Strike are DENIED. This case is dismissed with prejudice, all parties to bear their own costs.