

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-2000

# Cestonaro v. United States

Precedential or Non-Precedential:

Docket 99-3235

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Cestonaro v. United States" (2000). *2000 Decisions*. Paper 87.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/87

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3235

GIOVANNA CARBONIERO CESTONARO,
Individually and as Personal Representative
of the Estate of Danielle Cestonaro,
        Appellant

v.

UNITED STATES OF AMERICA

On Appeal from the District Court of the Virgin Islands
Division of St. Croix
D.C. Civil Action No. 95-cv-00102
(Honorable Raymond L. Finch)

Argued December 7, 1999

Before: BECKER, Chief Judge, SCIRICA and GARTH,
Circuit Judges

(Filed May 1, 2000)

        VINCENT A. COLIANNI, ESQUIRE
         (ARGUED)
        Hunter, Colianni, Cole & Bennett
        1138 King Street, Suite 301
        Christiansted, St. Croix
        U.S. Virgin Islands 00820

         Attorney for Appellant

          ERNEST F. BATENGA, ESQUIRE
            (ARGUED)
          Office of United States Attorney
          1108 King Street, Suite 201
          Christiansted, St. Croix
          U.S. Virgin Islands 00820

          PATRICIA A. HOOKS, ESQUIRE
          United States Department of the
           Interior
          Office of Regional Solicitors
          75 Spring Street, S.W., Suite 304
          Atlanta, Georgia 30303

           Attorneys for Appellee

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This appeal requires us to interpret the "discretionary function" exception to the Federal Tort Claims Act's general waiver of sovereign immunity. The District Court dismissed a wrongful death complaint against the United States, finding that the discretionary function exception to the Federal Tort Claim Act's waiver of sovereign immunity, 28 U.S.C. S 2680(a), applied. We will reverse.

I.

The underlying facts are undisputed. In December 1993, Daniele Cestonaro, his wife Giovanna, and their daughter, all Italian citizens and residents, were vacationing in St. Croix, Virgin Islands. On the evening of December 28, the Cestonaros parked their rental car in a lot on Hospital Street in Christiansted. Upon returning to their car after dinner, the Cestonaros were confronted by two armed gun men. Daniele Cestonaro was shot and died almost immediately.

The Hospital Street lot falls within the boundaries of the Christiansted National Historic Site owned and controlled by the United States Department of the Interior, National

Park Service. At the time of the murder, the Hospital Street lot was not an official parking lot. There were no signs designating or even indicating that it was a parking lot; it was neither paved nor striped. The lot's appearance, however, differed from the surrounding area in the Christiansted National Historic Site in terms of grade and surface, as it consisted of broken asphalt from a previous paving. Since the 1940s, the general public had used the Hospital Street lot as a parking area. Furthermore, the National Park Service was aware that crimes had occurred in the lot before December 28, 1993. In addition to crime incidents reports from the Virgin Island Police Department and its own park rangers, the National Park Service also received regular complaints about safety in the Hospital Street lot from local business owners.1

It is undisputed that the National Park Service had done nothing to deter nighttime parking in the Hospital Street lot. It had not posted signs prohibiting parking, nor signs warning of dangers of nighttime parking, nor issued tickets for illegal parking. In fact, the lot was lighted at night. Some time after the lot came into the government's possession, five lights were installed illuminating the Hospital Street lot. It is undisputed the National Park Service maintained those lights.2

_____

1. The record also reflects the Virgin Islands Police Department and the National Park Service shared information on crimes occurring within the Site's boundaries. Ten days before Mr. Cestonaro's murder, the Virgin Islands Police Department responded to investigate afirst degree robbery, attempted assault, carjacking and kidnaping that had taken place in the Hospital Street lot. Despite the information sharing, the National Park Service officials deposed here professed having had no knowledge of this December 18 incident.

But we need not reconcile these facts here. The National Park Service's knowledge, or lack thereof, of the dangers in the Hospital Street lot relates more directly to the underlying negligence claims than to whether the challenged actions here were protected by the discretionary function exception. See discussion infra.
2. Because the Hospital Street lot falls within the boundaries of the National Historic Site, which was so designated in 1952, it is likely that any physical improvements to the parking lot during the subsequent four decades were the result of a government decision. The record, however, contains no information on this point -- it does not reflect exactly when the lights were installed; who made the decision to install them; nor why they were installed. As noted, the record does establish that the National Park Service maintains the lights.

3

Giovanna Cestonaro filed a wrongful death action against the United States under the Federal Tort Claims Act, 28 U.S.C. SS 1346(b), 2671, and the Virgin Islands Wrongful Death Statute, 5 V.I.C. S 76. In her complaint, Mrs. Cestonaro alleged that "[d]efendant was negligent in failing to provide adequate lighting and correct the known dangerous condition and to warn others about the existence of the dangerous condition" at the Hospital Street lot. The United States filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) asserting the District Court lacked subject matter jurisdiction because the challenged National Park Service actions fell under the discretionary function exception to the FTCA's waiver of sovereign immunity.[3]

The District Court dismissed the complaint, finding the National Park Service's decisions concerning the Hospital Street lot were grounded in its mission to "safeguard the natural and historic integrity of national parks" and in its policy "to minimally intrude upon the setting of such parks." Cestonaro, Civ. No. 1995-102, slip op. at 11.

Mrs. Cestonaro appealed.

II.

We have jurisdiction under 28 U.S.C. S 1291. We exercise plenary review over the applicability of the discretionary function exception. See Gotha v. United States , 115 F.3d 176, 179 (3d Cir. 1997); Fisher Bros. Sales, Inc. v. United States, 46 F.3d 279, 282 (3d Cir. 1995) (en banc). Because the government's challenge to the District Court's jurisdiction was a factual one under Fed. R. Civ. P. 12(b)(1), we are not confined to the allegations in the complaint (nor was the District Court) and can look beyond the pleadings to decide factual matters relating to jurisdiction.

_____

3. Along with its motion to dismiss, the government also sought, in the alternative, judgment on the pleadings and summary judgment. Because the District Court found that it lacked subject matter jurisdiction, it did not reach the government's alternative arguments. See Cestonaro v. United States, Civ. No. 1995-102, slip op. at 1 n.1, (D.V.I. Sept. 11, 1998). We only address the discretionary function exception; we express no opinion with respect to the government's judgment on the pleadings and summary judgment motions.

4

See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

III.

A.

The Federal Tort Claims Act is a partial waiver of the sovereign immunity that would otherwise protect the United States from tort liability stemming from the actions of its employees. The express purpose of the FTCA is to make the United States liable "in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. S 2674. But the FTCA's waiver is tempered by several exceptions. See 28 U.S.C. S 2680. For our purposes, the relevant exception is the "discretionary function exception" that withdraws the waiver of sovereign immunity with regard to:

> Any claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government whether or not the discretion involved be abused.

28 U.S.C. S 2680(a).

The exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). The FTCA does not, however, define "discretionary function." As a result there has arisen a trove of case law identifying the contours of the government's tort liability. Our holding that the National Park Service's decisions concerning the Hospital Street lot fall outside the scope of the discretionary function exception is consistent with that jurisprudence. See, e.g., Gotha v. United States, 115 F.3d 176 (3d Cir. 1997); Cope v. Scott, 45 F.3d 445 (D.C. Cir. 1995).

5

B.

The analytical framework of the discretionary function exception has been laid out by the Supreme Court in a trilogy of cases -- United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig), 467 U.S. 797 (1984); Berkovitz v. United States, 486 U.S. 531 (1988); and United States v. Gaubert, 499 U.S. 315 (1991). See Gotha, 115 F.3d at 179-80.

The first issue is whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz, 486 U.S. at 536. If so, the exception cannot apply. If not, the question is whether the governmental action or inaction "is of the kind that the discretionary function exception was designed to shield." Id. If it is, the action constitutes the exercise of protected discretion, and the United States is immune from suit.

The touchstone of the second step of the discretionary function test is susceptibility to policy analysis. See Gaubert, 499 U.S. at 325 ("The focus of the inquiry is not the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis."). As we have previously stated, a plaintiff 's claim can only survive if "the challenged actions cannot `be grounded in the policy of the regulatory regime.' " Gotha, 115 F.3d at 179 (quoting Gaubert, 499 U.S. at 325). The Court in Gaubert underscored the importance of the relationship between the discretionary decision and policy considerations, noting the exception applies only if the challenged actions can "be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 325 n.7.

Before proceeding to apply the discretionary function analysis to the facts of this case, there is one remaining preliminary issue -- we must identify the challenged action. See Rosebush v. United States, 119 F.3d 438, 441 (6th Cir. 1997) (noting that a crucial step in determining whether challenged action is protected "is to determine exactly what conduct is at issue"). As noted by the District Court, plaintiff 's complaint levels two allegations concerning the National Park Service's conduct:

6

> Defendant was negligent in failing to provide adequate lighting and correct the known dangerous condition and to warn others about the existence of the dangerous condition.

Compl. at P 7. In effect, plaintiff challenges the National Park Service's decisions concerning lighting and warning in the Hospital Street lot. From the record, it is unclear whether the National Park Service made a decision not to add lighting or warning signs to the Hospital Street lot or whether that resulted from inaction or a non-decision. As was the case in Gotha, however, "[i]t would appear that . . . the action or inaction goes more to the issue of negligence rather than whether the issue of policy discretion is implicated." 115 F.3d at 180. Because the question before us is only whether the nature of the actions taken, or not taken, are susceptible to policy analysis, we need not concern ourselves with whether the National Park Service acted affirmatively regarding either lighting or warning at the Hospital Street lot. See Fisher Bros., 46 F.3d at 284; Smith v. Johns–Manville Corp., 795 F.2d 301, 308–09 (3d Cir. 1986) ("The test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion.").

IV.

A.

As noted, the first step in our analysis is whether there was discretion over the challenged action, that is, whether a federal regulation or policy specifically prescribes a course of action. See Berkovitz, 486 U.S. at 536. Plaintiff contends the National Park Service, by virtue of a 1985 agreement with the Virgin Islands, had no discretion with respect to the Hospital Street lot. The 1985 agreement amended the 1952 Memorandum of Agreement that established the historic area. According to the plaintiff, the 1985 Addendum mandated the removal of the Hospital Street lot by 1988, thereby eliminating any National Park Service discretion.

7

The 1985 Addendum states that:

> Whereas it is the intent of both parties to implement this addendum as early as possible within the next 3 years; NOW THEREFORE, it is understood that this addendum is for the specific purpose of detailing the specific remaining responsibilities of each party to achieve the purposes and objectives of the said Memorandum of Agreement, as amended.
>
> The National Park Service shall, subject to the availability of funds, assume and undertake the following responsibilities:
>
> A. Parking will . . . be removed from the area eas t of Hospital Street and West of Fort Christiansvaern. . . .

The District Court addressed the argument in two ways. First, it expressed skepticism that the 1985 Addendum constituted the kind of mandate that prevented the government's recourse to the discretionary function exception. Second, it held the plaintiff did not allege negligence on the part of the National Park Service for failing to close the parking lot, but rather for failing to provide adequate lighting or to warn of known dangers associated with nighttime parking in the lot.

Given the qualification "subject to the availability of funds," the Addendum does not appear to be the kind of express mandate that precludes coverage by the discretionary function exception. See, e.g. , Berkovitz, 486 U.S. at 536 ("[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow."). Here, the National Park Service's determination whether there were funds available seems to be the kind of judgment or choice inherent in the discretionary function exception. See id. ("[C]onduct cannot be discretionary unless it involves an element of judgment or choice."). The inclusion of "shall" in the Addendum language does not necessarily destroy the National Park Service's discretion. Cf. Brackin v. United States, 913 F.2d 858, 860 (11th Cir. 1990) ("While the language of these guidelines often includes the word shall, it is clear that the decision to use one method as opposed to another is based upon numerous

8

factors including a consideration of a method that the parties can agree on.").

But we need not determine whether the 1985 Addendum eliminates the National Park Service's discretion regarding the use of the Hospital Street lot. We agree with the District Court that the 1985 Addendum does not mandate a specific course of conduct and cannot be dispositive with respect to lighting and warning decisions in the Hospital Street lot. The lighting and warning decisions here, therefore, remain discretionary.

But this does not end our inquiry.4 We must determine whether the discretionary lighting and warning decisions are susceptible to policy analysis and therefore enjoy the protection of the discretionary function exception. See, e.g., Gaubert, 499 U.S. at 322–23 ("[E]ven assuming the challenged conduct involves an element of judgment, it remains to be decided whether that judgment is of the kind that the discretionary function exception was designed to shield." (internal quotations omitted)); Berkovitz, 486 U.S. at 546–47 ("[I]f the Bureau's policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful.").

As recognized by the District Court, we made clear in Gotha that susceptibility analysis "is not a toothless standard that the government can satisfy merely by associating a decision with a regulatory concern." Cestonaro, Civ. No. 1995–102, slip op. at 15. In Gotha, plaintiff sought to sue the United States for its alleged negligent failure to install a staircase or bar passage down an embankment at the United States Navy's Underwater

_____

4. We are mindful that "[w]hen established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324. That presumption, however, can be rebutted. See id. at 324–25 (noting that complaint can survive motion to dismiss if "the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime").

9

Tracking Range in St. Croix, Virgin Islands. Plaintiff slipped and fell while traveling along a footpath down the hillside. The United States contended its actions (or inactions) were motivated by "military, social and economic considerations." Gotha, 115 F.3d at 181 (internal quotations omitted). In rejecting the government's appeal to broad policy considerations that "conceivably could go to any decision by the Navy," we observed that "[t]his case is not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get." Id. We also concluded that "[i]t is difficult to conceive of a case more likely to have been within the contemplation of Congress when it abrogated sovereign immunity than the one before us." Id. at 182. That torts stemming from garden variety decisions fall outside the discretionary function exception is consistent with a primary motive behind the FTCA. See Dalehite v. United States, 346 U.S. 15, 28 & n.19 (1953) (noting that "[u]ppermost in the collective mind of Congress were the ordinary common-law torts" and that "congressional thought was centered on granting relief for the run-of-the-mine accidents"). In our view, the events surrounding Daniele Cestonaro's death are no more related to the National Park Service's policies than were the events surrounding Ms. Gotha's broken ankle related to the Navy's overarching policies. See discussion infra. What was true in Gotha is true here, except the consequences here were far more tragic.

B.

The National Park Service contends its decisions (or non-decisions) not to add lighting nor to post warning signs were grounded in its overarching objective of returning the area to its historic appearance.5 The government points to

_____

5. "The United States has the burden of proving the applicability of the discretionary function exception." National Union Fire Ins. v. United States, 115 F.3d 1415, 1417 (9th Cir. 1997). See also 14 Wright & Miller, Federal Practice and Procedure Jurisdiction 3d. S 3658.1 at 639 (1998) ("[M]ost courts have concluded that the burden of proving the applicability of the discretionary-function exception falls upon the United States.").

several documents to ground this policy concern. First, it relies on the original 1952 Memorandum of Agreement, which established the National Historic Site with the purpose of preserving the integrity of the historic structures and grounds. It also points to a 1972 Memorandum of Agreement which recited that its "basic objective in the management of Christiansted National Historic Site is to retain the architectural and historical integrity of the structures and their environment." The National Park Service also argues it is not expressly required to add lighting or post warning signs in the Hospital Street lot.

The National Park Service's arguments are inapposite. It may be arguable that the initial decision to maintain parking at the Hospital Street lot was protected by the discretionary function exception. But assuming this were so, subsequent decisions concerning the Hospital Street lot were not necessarily protected. See, e.g., Indian Towing Co., Inc. v. United States, 350 U.S. 61 (1955); George v. United States, 735 F. Supp. 1524 (M.D. Ala. 1990).

Indian Towing involved alleged negligence by the United States Coast Guard in its failure to properly maintain the light on a lighthouse it had established. Despite the Coast Guard's claim of sovereign immunity, the Court found the United States could be held liable under the FTCA for the negligent operation of the lighthouse even though the initial decision to establish a lighthouse was discretionary. The Court explained

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

11

Indian Towing Co., 350 U.S. at 69. In reasserting the vitality of Indian Towing, the Supreme Court has stated that

> The [Indian Towing] Court stated that the initial decision to undertake and maintain lighthouse services was a discretionary judgment. The Court held, however, that the failure to maintain the lighthouse in good condition subjected the Government to suit under the FTCA. The latter course of conduct did not involve any permissible exercise of policy judgment.

Berkovitz, 486 U.S. at 538 n.3 (internal citations omitted).

In George, a District Court rejected the National Forest Service's attempt to invoke the discretionary function exception when Mr. George was attacked by an alligator while swimming in a recreational swimming area designated by the Forest Service. The court held that although the decision to establish the swimming area was discretionary, the subsequent failure to warn the public of known dangers was not covered by the exception. See George, 735 F. Supp. at 1533 ("[O]nce the decision was made, the Forest Service was under a duty to act reasonably for protection of humans, particularly against hidden dangers known to the Service.").

In a similar case, in which a swimmer was struck and killed by a boat in an unrestricted portion of a lake supervised by the Army Corps of Engineers, the Court of Appeals for the Tenth Circuit held that although a"zoning" decision that resulted in the area having no restrictions was discretionary, the subsequent failure to warn swimmers was not. Boyd v. United States, 881 F.2d 895, 898 (1989). In so holding, the court in Boyd rejected the government's argument that a finding that it had protected discretion with respect to initial "zoning" decisions necessitated a conclusion that the discretionary function exception protected all decisions affecting the zoned area. See id. ("[T]he government asserts that a discretionary decision not to zone an area necessarily makes discretionary a decision that nothing be done there, regardless of potential hazards. We do not agree.").

12

Even if there was protected discretion for the National Park Service's decision to maintain parking at the Hospital Street lot, that does not answer whether subsequent decisions were also protected. See Indian Towing , 350 U.S. at 69; Boyd, 881 F.2d at 898; George, 735 F. Supp. at 1533. See also Patel v. United States, 806 F. Supp. 873, 878 (N.D. Cal. 1992) (refusing to hold that "all actions taken in the course of serving a search warrant are protected by the discretionary function exception" despite recognizing that "decisions to investigate the alleged illegal activity, to obtain the search warrant, when and where to serve the warrant" among others were immune from suit because they were "based on public policy considerations").

The National Park Service fails to show how providing some lighting, but not more, is grounded in the policy objectives with respect to the management of the National Historic Site. Similarly, the National Park Service has not presented a viable argument as to how its alleged failure to warn is rooted in its policy objectives. The government has not argued that having some lighting at the Hospital Street lot, but not more lighting, is consistent with its policy objective of preserving the historical integrity of the structures and their environs at the National Historic Site. Nor has it argued that having an allegedly dimly lit parking lot with no warning signs is consistent with its stated objectives. We doubt it can reasonably make such arguments.6

_____

6. In past cases, the National Park Service has relied on 16 U.S.C. S 1 to argue the discretionary function exception protects its policy decisions made by balancing aesthetic against safety interests. See, e.g., Shansky v. United States, 164 F.3d 688 (1st Cir. 1999); Chantal v. United States, 104 F.3d 207 (8th Cir. 1997); Bowman v. United States, 820 F.2d 1393 (4th Cir. 1987). In the present case, the National Park Service might have argued that its decision not to install further lighting and/or post warning signs regarding the dangers relative to the Hospital Street lot involved a similar balancing given the historical nature of the Christiansted National Historic Site. The National Park Service, however, neither raised this argument before us nor cited the cases reflecting this balancing formula. This alone gives us ground to reject such a balancing formula.

Accordingly, we see no tension between our decision and those reached in the cases cited. Under proper circumstances, the National

13

Looking beyond the government's general preservation of historicity argument, the District Court stated that "[f]urther and more importantly, the government argues that the NPS' decision reflected the NPS' hope that it could discourage parking -- a use of the Site inconsistent with the Site's historicity -- by eliminating all indicia of parking in the lot." Cestanaro, Civ. No. 1995-102, slip op. at 11. But, as noted, the record shows the National Park Service had not eliminated all indicia of parking in the Hospital Street lot. Neither had the National Park Service taken any action to restore the property to grade or surface of the original nor had it any plan to do so.

In short, there is no evidence to support the government's contention, adopted by the District Court that "the NPS made no improvements to the Site, for fear that improvements would (1) detract from the historic scene; and (2) lead individuals to believe that the Hospital Street lot was a sanctioned parking area and so increase the number of individuals parking there, further undermining the Site's historic character." Id. at 16.7

_____

Park Service may balance aesthetic and safety interests and avoid liability through the discretionary function exception. To properly invoke an aesthetic interest, there must be a reasonable relationship between that interest and the challenged action. See discussion infra Part IV.C. See also Shansky 164 F.3d at 695 (recognizing there must be a "plausible nexus between the challenged conduct and the asserted justification"). The Shansky court, relying both on the National Park Service's lack of knowledge of any prior incidents at the site and its demonstrated efforts to restore the site in an historically accurate manner, found the requisite connection between policy and justification satisfied. 164 F.3d at 695-96. As noted, neither factor pertains here. It is clear that the requisite nexus between the challenged action and 16 U.S.C. S 1 is missing.

7. As noted, the District Court understood the National Park Service to argue the discretionary function exception applied because it did not post signs so as to avoid unintentionally attracting additional parking, which in turn would be contrary to its policy of restoring the Site's historicity. The National Park Service has made similar claims in past cases involving the discretionary function exception. See Childers v. United States, 40 F.3d 973, 976 (9th Cir. 1995). Although the National Park Service in Childers claimed its decision not to post warning signs on unmaintained winter trails in Yellowstone National Park was based,

14

In its attempt to fashion a policy rationale for the National Park Service's actions, the District Court also relied on the Christiansted General Management Plan, which set forth a management strategy for the site, and which called on the Park Service to:

> preserve the historic site to as closely as possible represent its appearance of the early to mid nineteenth century . . . No physical alterations will be undertaken to provide for . . . visitor safety, if it is determined that such actions will impair significant architectural features or structural systems.

Id. at 11-12.

The District Court accurately noted that the connection between the "above-described policy and the NPS' inaction in the instant matter is somewhat attenuated." Id. at 12. But it concluded that "the NPS' decision not to place improved lighting or signs at the Hospital Street lot can be characterized as part of an overall policy and so falls within the discretionary function exception." Id. We disagree.

As noted, the Supreme Court has made clear that the proper inquiry in analyzing the discretionary function exception is whether "the challenged acts of a Government employee . . . are of the nature and quality that Congress intended to shield from tort liability." Varig, 467 U.S. at 813. In explaining Congress' intent, the Court emphasized that the core purpose of the exception was to "prevent

_____

in part, on its cognizance "that posting warning signs would inadvertently attract visitors to unmaintained trails," the court decided the case on other grounds. Id. The National Park Service policy at issue in Childers provided: " `If roads and trails cannot be maintained as designed and built, they should either be closed or the public adequately warned.' " Id. (citation omitted). The Court of Appeals for the Ninth Circuit found the National Park Services decision to provide warnings "though park brochures, visitor center displays, bulletin board information, and personal contacts" rather than by posting signs on trails was protected by the discretionary function exception. Id. Here, there is no evidence the National Park Service warned or attempted to warn of the potential danger of parking in the Hospital Street lot through any means.

15

judicial `second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id.  at 814. The exception is meant " `to protect the Government from liability that would seriously handicap efficient government operations.' " Id. (quoting United States v. Muniz, 374 U.S. 150, 163 (1963)).

In our view, plaintiff 's suit does not put the District Court in the position of second guessing a National Park Service administrative decision that is "grounded in social, economic, and political policy." We are unable tofind a rational nexus between the National Park Service's lighting or warning decisions (or non-decisions) and social, economic and political concerns. Nor will plaintiff 's claim seriously impede the National Park Service's proper functions or operations. The National Park Service remains free to make decisions grounded in policy considerations without risking tort liability; but it cannot make decisions unrelated to policy and then seek shelter under the discretionary function exception. See Sami v. United States, 617 F.2d 755, 766-67 (D.C. Cir. 1979) ("[T]he exception exempts the United States from liability only where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency." (internal quotations omitted)).

In one of its early treatments of the FTCA, the Supreme Court articulated the Act's purpose in terms that underscore why the National Park Service cannot rely on the discretionary function exception here. The Court stated:

> The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental affairs in circumstances like unto those in which a private person would be liable and not to leave just treatment to the caprice and legislative burden of individual private laws.

Indian Towing, 350 U.S. at 68-69. Would a private actor in the National Park Service's shoes be amenable to suit? We believe under the facts presented, the answer is yes. No challenged decision, or non-decision, taken here by the

16

National Park Service was reasonably rooted in policy considerations. As a result, the discretionary function exception does not apply. Plaintiff may or may not prevail on the merits, but the FTCA does not bar her suit. 8

C.

We do not hold that once an agency makes a decision inconsistent with its policies that all subsequent decisions must fall outside the discretionary function exception. Relying on Cope v. Scott, 45 F.3d 445 (D.C. Cir. 1995), plaintiff contends that by deciding to maintain a parking lot in the middle of the historic site contrary to its stated objective of returning the area to its early 19th Century appearance, the National Park Service abrogated its policies and cannot rely on them to justify its subsequent decisions concerning the Hospital Street lot. But Cope does not stand for such a broad proposition.

In Cope, plaintiff was injured in an accident on Beach Drive which passes through Washington, D.C.'s Rock Creek Park. Plaintiff sustained injuries when a car crashed into his after losing traction on a curve in the rain. The National Park Service, which owns and operates Beach Drive, asserted a discretionary function exception defense saying that its decision not to place a "slippery when wet" warning

_____

8. In her appeal, Mrs. Cestonaro also raised whether the District Court abused its discretion in its treatment of her motion for reconsideration, which she claimed contained a request for leave to amend her complaint which was ignored by the District Court. In a footnote in her Motion to Reconsider, plaintiff stated:

> In the event the Court feels that the allegation that the NPS was negligent in failing to prohibit parking in the Hospital Street lot should be pled more explicitly in the Complaint, Plaintiff requests the opportunity to file a Motion to Amend the Complaint to include such allegation.

In light of our conclusion that the conduct challenged in plaintiff 's original complaint, as understood by the District Court, is not covered by the discretionary function exception, we need not address plaintiff 's motion for reconsideration. Upon the reinstatement of her suit, plaintiff may request leave to amend her complaint. See  Fed. R. Civ. P. 15(a). We express no opinion whether such a motion should be granted.

17

sign before the curve was a discretionary policy decision. The Court of Appeals for the D.C. Circuit reversed the District Court's dismissal based on the discretionary function exception, holding the decision of whether to post the sign was not rooted in policy considerations. See Cope, 45 F.3d at 451-52.

The Cope Court stated that it was unconvinced by the National Park Service's aesthetics argument given that "twenty-three traffic control, warning, and informational signs already exist on the half-mile stretch bracketing the curve on which the accident occurred--a stretch of road that carries 20,000 vehicles daily." Id. at 452 (internal quotations omitted). Recognizing that other aesthetics-based failure to warn cases had reached the opposite result, the D.C. Circuit stated that those decisions were "easily distinguishable [because] . . . the decisions were based on a reasonable desire to protect the experience of the park visitor." Id. We believe the essential holding in Cope to be that a decision (or non-decision) must be reasonably related to a policy consideration to fall under the discretionary function exception.9

V.

For the reasons stated, we hold the discretionary function exception does not apply to the National Park Service's decisions concerning the Hospital Street lot. We will reverse the judgment of the District Court and remand for proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit
_____

9. Note that this is different than asking whether a policy-based decision was correct or wise because such analysis would run afoul of the statutory command that the exception applies "whether or not the discretion be abused." 28 U.S.C. S 2680(a).

18