**Richard FABEND and Margaret Fabend, Plaintiffs,**

**v.**

**ROSEWOOD HOTELS AND RESORTS, L.L.C., Caneel Bay, Inc., and United States of America, Defendants.**

**Rosewood Hotels and Resorts, L.L.C., Caneel Bay, Inc., Third-party Plaintiffs,**

**v.**

**United States of America, Third-party Defendant.**

No. 1999–155.

District Court,
Virgin Islands,
D. St. Thomas.

Dec. 3, 2001.

Vincent A. Colianni, St. Croix, VI, for the plaintiff.

Matthew J. Duensing, St. Thomas, VI, for defendant Rosewood Hotels.

Joycelyn Hewlett, AUSA, St. Thomas, VI, for defendant United States of America.

## MEMORANDUM

MOORE, District Judge.

Defendant and third-party defendant United States ["United States" or "defendant"] moves to dismiss the complaint of plaintiffs Richard and Margaret Fabend [collectively "Fabends" or "plaintiffs"] or in the alternative for summary judgment.[1] Plaintiffs and third-party plaintiffs Rosewood Hotel and Caneel Bay, Inc. oppose the government's motion. For the reasons set forth below, this Court will deny defendant's motion.

## I. FACTS

In February 1999, the Fabends traveled to St. John for a vacation. They stayed at the Cinnamon Bay Campground ["Campground"], which is leased by the National Park Service ["NPS" or "Park"] to Caneel Bay, Inc. On February 17th, Richard Fabend, a retired high school teacher, went body surfing with some friends at Cinnamon Bay Beach. While swimming, he was driven head-first into the sand by a shore-break wave.[2] The force of the wave's impact broke his neck and rendered him a quadriplegic.

The Fabends are now suing the United States for negligence, based on the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 1346(b),[3] for: (1) failure to post a permanent shore-break warning sign on the walkway at the entrance to the beach at Cinnamon Bay and (2) failure to follow its own safety policy to distribute brochures containing shore-break warnings to beachgoers at Cinnamon Bay, or to place a brochure containing the warning on the bulletin board at the Cinnamon Bay campground and to post temporary warning signs on days with rough surf.[4] The United States counters that its actions were protected by the discretionary function exception under 28 U.S.C. § 2680.[5] This

1. The United States argues that the complaint should be dismissed pursuant to Rules 12(b)(1) or 12(b)(6) or that summary judgment be granted pursuant to Rule 56(f).

2. According to Richard W. Grigg, a professor of oceanography at the University of Hawaii:
   Shorebreak is a unique ocean condition found in beach areas where the bottom of the ocean gets shallow—or shoals—rapidly. Shorebreak waves break in shallow water and often in a plunging manner, from top to bottom. Shorebreak waves can break more suddenly and with considerably more force than waves breaking along shorelines where the depth of the ocean decreases more gradually.
   (Decl. of Richard W. Grigg in Supp. of Pls.' Opp. to Def.'s Mot. to Dismiss and for Summ. J. at 2.)

3. The FTCA makes the United States liable for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where in the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b).

4. Margaret Fabend has brought an additional claim for loss of consortium.

5. The United States raises other grounds upon which to rule in its favor. For example, the United States argues that the ocean is an open and obvious danger and, therefore, the government has no duty to warn. (Mem. in Supp. of Def.'s Mot. to Dismiss or in the Alternative for Summ. J. at 22–27.) The government also contends that even if it was negligent, its negligence was not the proximate cause of Richard Fabend's injury. (*Id.* at 27–29.) The United States next asserts that the court has enjoined the government from closing a beach in the territory. (*Id.* at 30–32.) Finally, it argues that Richard Fabend assumed the risk of injury by swimming and

Court has jurisdiction under 28 U.S.C. §§ 1346(b), 2671.

## II. DISCUSSION

### A. Discretionary Function Exception

Under the FTCA, the United States waives sovereign immunity for torts involving "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA excludes from this waiver, however, agency decisions based on the exercise of discretion, known as the discretionary function exception.

> The provisions of this chapter and section 1346(b) of this title shall not apply to-
> (a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). In essence, the United States argues that it is immune from liability because the decisions of the NPS to provide only warnings in its publications and not to post permanent or temporary warnings. fall within this exception.

The United States Supreme Court has dealt extensively with the discretionary function exception. *See, e.g., U.S. v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); *U.S. v. Varig Air-*

*lines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) ("The discretionary function exception ... marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain government activities to suit by private individuals"); *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).[6] As the Supreme Court has noted, the purpose of the discretionary function exception is to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. Thus, if the challenged action involves the "permissible exercise of policy judgment," that action will be protected from liability.

To determine whether a particular action comes within the discretionary function exception, the Supreme Court created a two-part test in *Gaubert.* I must first determine whether the governmental act or omission "involves an element of judgment or choice." *Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267. If a "statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the government agency has no discretion to exercise and the discretionary function exception does not apply. If the agency has no choice, there is no exception to the FTCA's waiver of immunity. If I find the agency's act involves a choice, on the other hand, I must then determine whether that judgment is "based on considerations of public policy." *Id.* at 323, 111 S.Ct. 1267.

---

body surfing at Cinnamon Bay Beach. (*Id.* at 32–35.) As these grounds involve issues of fact for the jury, I do not reach them.

**6.** The Third Circuit Court of Appeals has also dealt extensively with this issue. *See, e.g., Mitchell v. United States,* 225 F.3d 361 (3d

Cir.2000); *Cestonaro v. United States,* 211 F.3d 749 (3d Cir.2000); *Gotha v. United States,* 115 F.3d 176 (3d Cir.1997); *United States Fidelity & Guaranty Co. v. United States,* 837 F.2d 116 (3d. Cir.1988).

The government need not consciously have considered public policy when makings its decision, as long as its decision is "susceptible to policy analysis." *Id.; see also Cestonaro v. United States,* 211 F.3d 749, 753 (3d Cir.2000); *Shansky v. United States,* 164 F.3d 688 (1st Cir.1999) ("The critical question is whether the acts or omissions that form the basis of the suit are susceptible to a policy-driven analysis, not whether they were the end product of a policy-driven analysis."). Thus, the law presumes that an agency's choice in exercising its discretion implicates policy judgments and the plaintiff must rebut this presumption. The public policy analysis, however, "is not a toothless standard that the government can satisfy merely by associating a decision with a regulatory concern." *Cestonaro,* 211 F.3d at 755. There must be some "rational nexus" between the challenged conduct and the asserted policy justification. *See id.* at 759.

**B. Applying the Discretionary Function Exception to the National Park Service's Cinnamon Bay Policy**

Since all the parties concede that there is no statute or regulation mandating that the National Park Service have temporary or permanent signs warning of shore-breakers, I need only determine whether the NPS's decision not to have such signs was based on considerations of public policy. The United States asserts two grounds as its public policy basis for only publishing warnings in Park publications and not also posting warning signs the Cinnamon Bay Campground: (1) budget-ary and manpower constraints and (2) negative aesthetic impact. The government relies on the NPS's statutory mandate "to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner as will leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1.[7] The United States contends that the Park was well within its discretionary right to balance visitor safety and enjoyment with its mandate of conservation, resource allocation and scenic preservation. Although the Court of Appeals recognizes that the government "may balance aesthetics and safety interests and avoid liability through the discretionary function exception," there must be "a reasonable relationship between the interest and the challenged action." See *Cestonaro,* 211 F.3d at 756 n. 6. I conclude that the Park's failure to post a sign warning of shore-breaking waves at the Campground is based on no such reasonable relationship.

The difficulty with both of the government's articulated policy bases is the Park's inconsistent application of its purported policy decision not to post safety warning signs on its beaches. For example, the NPS posts a shore-breaker warning sign on the beach at Trunk Bay, which is much less developed and thus more scenic and pristine than the Cinnamon Bay Campground. The United States has given no satisfactory explanation why a swimmer at Trunk Bay is entitled to the added

7. (Def.'s Reply to Pls.' Opp. to the Def.'s Mot. to Dismiss or in the Alternative for Summ. J. at 10.) Case law is all over the map on the issue of visitor safety versus government discretion. *Compare Rich v. United States,* 119 F.3d 447 (6th Cir.1997) (concluding that the discretionary function exception trumped an alleged failure to warn about hazardous road conditions) *and Tippett v. United States,* 108 F.3d 1194 (10th Cir.1997) (holding that a failure to warn or otherwise abate the dangers associated with a charging moose is grounded in policy) *with Cope v. Scott,* 45 F.3d 445 (D.C.Cir.1995) (holding that the discretionary function exception did not vitiate an alleged failure to warn about hazardous road conditions) *and George v. United States,* 735 F.Supp. 1524 (M.D.Ala.1990) (holding that government's failure to warn about an alligator in lake was not based on policy).

on-site warning that "Heavy Surf Can be Dangerous. It is the Leading Cause of Visitor Injury in this Park,"[8] but not the swimmer at the Campground. No reason has been given why it was less a drain on manpower to put a separate sign at the more pristine Trunk Bay than to add a similar warning to already existing signage at the Campground.

▇ Placing the shore-breaker warning sign at the more scenic Trunk Bay rather than at Cinnamon Bay also belies the Park's aesthetics policy argument for application of the discretionary function exception. Although visitors expect to rough it at the Campground by sleeping in tents or in very rustic cottages, it is nevertheless a developed complex of more than just picnic tables and charcoal grills. The Cinnamon Bay Campground consists of some forty cottages with terraces, several tent sites, a general store, a snack bar, a restaurant, a museum, a beach shop, a water sports rental booth, a sewage treatment plant, a reverse osmosis facility, a 150–seat amphitheater with a projection booth and permanent screen, hotel registration desk, storage facility, public restrooms, and a kiosk with bulletin boards. In addition, there are several signs on the property warning of "Danger: High Voltage," "No

Lifeguard on Duty," and "Reef Damage," giving directions to and mentioning the water sports center and beach shop, and asking visitors to rinse their snorkeling equipment.[9] The presence of these various signs at the Campground along with the Park's decision to post a warning sign at the more pristine Trunk Bay contradicts the government's aesthetics argument. *See Cope v. Scott*, 45 F.3d 445, 452 (D.C.Cir.1995) (rejecting the government's aesthetic argument for not posting a "slippery when wet sign" within a half-mile radius of some 23 traffic control, warning, and informational signs).

▇ By applying its judgment selectively, the NPS lost the protection of any discretionary function exception it might otherwise have obtained. *See, e.g., Shansky*, 164 F.3d at 695 (noting that when the NPS commits itself to a course of action and neglects to apply that decision evenhandedly, "one might argue that the Park Service's discretion was cabined by a prior policy judgment"). If it was indeed the Park's considered judgment and choice to warn visitors to its beaches about the danger of shore-breaking waves only in its brochures and handouts, the Park was obligated to follow the decision consistently.[10]

---

8. (Ex. O, Decl. of Vincent Colianni II in Supp. of Pls.' Opp. to Def.'s Mot. to Dismiss and for Summ. J.)

9. (Pls.' Mem. of Law in Opp. to Def.'s Mot. to Dismiss and Mot. for Summ. J. at 9–10; Exs. 3–8 at Decl. of Richard W. Grigg in Supp. of Pls.' Opp. to Def.'s Mot. to Dismiss and for Summ. J.)

10. The danger here is well-defined and specific, not a nebulous or hidden danger. (Exs. E–L, Decl. of Vincent Colianni II in Support of Pls.' Opp. to Def.'s Mot. to Dismiss and for Summ. J.) Where the danger is specific rather than merely potential, the discretionary function exception may not protect a government agency's failure to warn. *See Duke v. Department of Agriculture*, 131 F.3d 1407, 1411

(10th Cir.1997) (rejecting the government's discretionary exception argument because a "specific hazard existed, distinct from the multitude of hazards that might exist in, for example, a wilderness trail through a national park or forest, where warnings might detract from the area's character or safety structures might be costly."); *Gotha v. United States*, 115 F.3d 176, 181–82 (3d Cir.1997) (rejecting government's discretionary function exception claim for failing to provide safeguards on a footpath on a Navy underwater tracking range); *Cope*, 45 F.3d at 451–52 (rejecting government's discretionary function exception claim for failing to provide adequate warning of known road hazard); *Boyd v. United States*, 881 F.2d 895, 898 (10th Cir. 1989) (rejecting government's discretionary

Based on the preceding analysis, I cannot find a reasonable relationship between the Park's decision to publish warnings only in its handouts and its selective posting of signs warning swimmers of the danger of shore-breaking waves. Accordingly, I hold that the National Park Service's failure to post such a warning sign at the Cinnamon Bay Campground is not protected by the discretionary function exception for budgetary, manpower or aesthetic reasons because its decision was not based on any of these policies. *See Cestonaro*, 211 F.3d at 759 ("[T]he exception exempts the United States from liability only where the question is not negligence but social wisdom, not due care but political practicability, not reasonableness but economic expediency.") (quoting *Sami v. United States*, 617 F.2d 755, 766–67 (D.C.Cir.1979)). Therefore, I will deny the United States' motion to dismiss or in the alternative for summary judgment.

### III. CONCLUSION

The United States has failed to establish that its decision not to post shore-breaker warning signs at all of its beaches on St. John is protected by the discretionary function exception. Therefore, this Court will deny the government's motion to dismiss the plaintiffs' complaint or in the alternative for summary judgment. This Court will also deny the government's motion to strike plaintiff's surreply as moot.

### ORDER

For the reasons set forth in the foregoing Memorandum of even date, it is hereby

function exception claim for failure to warn swimmers of incoming boats in popular swimming area); *Smith v. United States*, 546 F.2d 872, 876–77 (10th Cir.1976) (rejecting government's discretionary function exception claim for failure to warn of the hazards of a thermal pool in a national park). The

**ORDERED** that defendant's motion to dismiss or in the alternative for summary judgment (Docket # 186) is **DENIED**; it is further

**ORDERED** that defendant's motion to strike plaintiff's surreply (Docket # 209) is **DENIED** as **MOOT**.

government's suggestion that signs warning against all the dangers to Campground visitors from the many potential sources would detract from the Park's scenery would be unconvincing, if it were apposite. (Mem. in Supp. of Def.'s Mot. to Dismiss or in the Alternative for Summ. J. at 20.)