**RICHARD WYATT, Plaintiff**
**v.**
**ROSEWOOD HOTELS AND RESORTS, LLC,**
**CANEEL BAY, INC., and UNITED STATES**
**OF AMERICA, Defendants**

Civil No. 2004-12

District Court of the Virgin Islands

Division of St. Thomas and St. John

July 19, 2005

VINCENT COLIANNI, ESQ., *For the Plaintiff.*

MATTHEW J. DUENSING, ESQ., *For the defendant Rosewood Resorts and Caneel Bay.*

JOYCELYN HEWLETT, AUSA, *For the defendant United States.*

GOMEZ, *Judge*

## AMENDED MEMORANDUM

### (July 19, 2005)

On January 9, 2003, while swimming at the Cinnamon Bay beach on St. John, Richard Wyatt ("Wyatt") was struck by a breaking wave. As a result, Wyatt was driven into the sand and suffered a broken neck, which left him a quadriplegic. At the time of his injury, Wyatt was vacationing at the Cinnamon Bay campground, which is located within the confines of the Virgin Islands National Park, under the control of the National Park Service ("the Park"). The Park leases the campground to defendant Caneel Bay, Inc., ("Caneel Bay") which is, in turn, owned by defendant Rosewood Hotels and Resorts, LLC ("Rosewood"). Wyatt subsequently filed this action against Rosewood, Caneel Bay, and the United States ("the government") to recover damages for the injuries he sustained. Wyatt has since stipulated to the dismissal of his action against Rosewood and Caneel Bay, leaving the government as the sole defendant.

Wyatt's claim against the government centers around the Park's decision not to post signs on the beach at Cinnamon Bay warning of the dangers of shorebreaking waves. Wyatt alleges that his injuries were a consequence of that decision. The Park's decision not to post signs is grounded in its interpretation of its policy objectives to promote aesthetics, safety, and appropriate resource allocation at Cinnamon Bay. To that end, the Park has developed Cinnamon Bay into a campground

that has, among other things, cottages, tent sites, a store, a restaurant, and an amphitheater. In this construct, the Park has some signs. However, there are no signs that warn of shorebreaking waves. The Park elected to warn of shorebreaking waves in handouts provided to visitors.

Before the Court is the government's motion to dismiss Wyatt's claims pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). Oral arguments were heard on the government's motion on January 21, 2005.

## I. STANDARD FOR MOTION TO DISMISS

Where a motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(1), and the motion challenges the district court's jurisdiction, the court is not confined to the allegations in the complaint, but can consider other evidence, such as affidavits, depositions, and testimony, to resolve factual issues related to jurisdiction. *See Mortensen v. First Federal Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (stating that because at issue is the very power of the trial court to hear the case, a court is free to weigh evidence beyond the allegations in the complaint). Furthermore, "no presumptive truthfulness attaches to plaintiffs allegations" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* However, in cases where there is a question of whether the discretionary function exception to the Federal Tort Claims Act applies, it is the United States that has the ultimate burden of proving the applicability of the exception. See *Cestonaro v. United States*, 211 F.3d 749, 756, n.5 (citing *National Union Fire Ins. v. United States*, 115 F.3d 1415, 1417 (9th Cir. 1997)).

The standard for analyzing a motion to dismiss pursuant to Rule 12(b)(6) is more lenient to the plaintiff. In reviewing a motion under that rule, "the material allegations of the complaint are taken as admitted," and the Court must liberally construe the complaint in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969) (citing FED. R. CIV. P. 8(f) and *Conley v. Gibson*, 355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). All reasonable inferences must be drawn in favor of the non-moving party. *Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir. 1987). The Court must not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

## II. DISCUSSION

The government argues that the Court lacks subject matter jurisdiction over Wyatt's claim because the claim is barred by the discretionary function exception to the Federal Tort Claims Act ("FTCA"). The government also argues that because the Virgin Islands Open Shorelines Act prohibits restrictions to public access to beaches in the park, the Park should not be held liable for injuries to the public resulting from naturally occurring conditions in the ocean. 12 V.I.C. §§ 401 *et seq.* The Court will devote its discussion to the discretionary function jurisdictional question.[1]

---

[1]    The government does not make clear in its papers whether it believes that the *Open Shorelines Act* presents the government with relief pursuant to FED. R. CIV. P. 12(b)(1) or FED. R. CIV. P. 12(b)(6). As is noted in the discussion on standards above, the two carry different burdens of proof, and it is thus not possible to simply argue them in the alternative. See *Mortensen*, 549 F.2d at 891 ("The [12(b)(1)] factual attack, however, differs greatly, for here the trial court may proceed as it never could under 12(b)(6) or FED. R. CIV. P. 56"). Because it is unlikely that the government would make a subject matter jurisdiction argument that a state/territory-created statute, such as the *Open Shorelines Act*, invests the Court with, or divests the Court of, jurisdiction, the Court will view the argument in a Rule 12(b)(6) context. In that context, the Court must reject the government's argument for failing to meet the burden imposed on a moving party when seeking dismissal for failure to state a claim.

The government contends it should be protected from liability from tort claims arising from injuries caused by natural hazards in the ocean because without such protection, the Park and other property owners who have beaches adjacent to their properties would be subject to unwarranted tort claims arising from natural hazards in the ocean. The government does not point to any alleged deficiencies in Wyatt's complaint that would allow it to prevail with this argument on a motion to dismiss. Instead, the government argues the merits of the issue. The government also argues that the *Open Shorelines Act* provides it with a defense to Wyatt's claim. Even if it did, having a defense to a legally recognized claim does not talismanically make that claim legally unrecognizable for Rule 12(b)(6) purposes. Indeed, the government confuses and equates having a defense to a claim, which raises no jurisdictional bar, with having the authority to assert that the claim itself is legally insufficient. Under the 12(b)(6) standard, the allegations made by the plaintiff must be taken as true. *See Gould Elecs., Inc., v. United States*, 220 F.3d 169, 178 (3d Cir. 2000). Furthermore, the *Open Shorelines Act* has never been used to provide the relief the government seeks here, and this Court is not inclined to recognize it as creating such relief.

## A. The Federal Tort Claims Act and the Discretionary Function Exception

■ As a sovereign, the United States cannot be sued unless there is a waiver of sovereign immunity. *See FDIC v. Meyer*, 510 U.S. 471, 475, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit"). The FTCA operates as a partial waiver of sovereign immunity, conferring exclusive jurisdiction upon district courts in civil actions for money damages

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). In addition, the FTCA provides: "The United States shall be liable, respecting ... tort claims in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.

■ The waiver of immunity expressed in the FTCA is modified by several exceptions, enumerated at 28 U.S.C. § 2680. Where an exception to the waiver applies, a court is deprived of subject matter jurisdiction over the case. See *Cestonaro*, 211 F.3d at 753. The discretionary function exception is one such exception. The FTCA provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to:
>
> (a) Any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The exception "marks a boundary between Congress' willingness to impose tort liability on the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Airea Rio*

*Grandense (Varig Airlines)*, 467 U.S. 797, 808, 81 L. Ed. 2d 660, 104 S. Ct. 2755 (1984). The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814.

The United States Supreme Court has outlined the analytical framework for determining whether the discretionary function exception applies. *Varig*, 467 U.S. 797; *Berkovitz v. United States*, 486 U.S. 531, 100 L. Ed. 2d 531, 108 S. Ct. 1954 (1988); *United States v. Gaubert*, 499 U.S. 315, 113 L. Ed. 2d 335, 111 S. Ct. 1267 (1991). The first prong of inquiry is whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. As the *Berkovitz* Court noted, "[i]n examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee." *Id.* If the challenged conduct lacks this element of choice, "then there is no discretion in the conduct for the discretionary function exception to protect." *Id.*

If the challenged conduct is determined to contain the requisite element of judgment or choice, the inquiry does not end. Rather, the next question becomes whether the governmental action or inaction "is of the kind that the discretionary function exception was designed to shield." *Id.* In order to answer this second question, the focus of inquiry must be on whether the challenged actions or omissions are susceptible to policy analysis. *Gaubert*, 499 U.S. at 325. In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Berkovitz*, 486 U.S. at 537.

To establish the presence of the necessary policy considerations, the party seeking invocation of the exception must demonstrate a rational relationship between the discretionary decision and policy considerations such that the challenged actions can "be said to be based on the purposes that the regulatory regime seeks to accomplish." *Gaubert*, 499 U.S. at 325 n.7.

## B. Analysis

In order to prevail in its claim that the discretionary function exception applies, the government must demonstrate that its decision not to post a warning sign 1) is a matter of choice or discretion for the

agency; and 2) is susceptible to policy analysis. Both the government and Wyatt agree that the challenged act was discretionary. (Pl's Opp. to Defs Mot. to Dismiss at 8.) Accordingly, the first part of the discretionary function exception analysis is complete.

As to the second prong of the analysis, the government argues that the Park's decision not to post warning signs is "susceptible to policy analysis" under *United States v. Gaubert,* 499 U.S. at 325. The government argues that where the first prong of discretion is established, it is presumed that the acts are grounded in public policy. See *Monzon v. United States,* 253 F.3d 567 (11th Cir. 2001); *Elder v. United States,* 141 F. Supp. 2d 1334 (C.D. Utah 2001), *aff'd,* 312 F.3d 1172 (10th Cir. 2002). The presumption that the government highlights, however, is not absolute. Indeed, the United States Court of Appeals for the Third Circuit has noted that this presumption is rebuttable:

> We are mindful that 'when established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion.' That presumption, however, can be rebutted.

*Cestonaro,* 211 F.3d at 755 n.4 (citing *Gaubert,* 499 U.S. at 324).

The government further contends that there is a rational relationship between the Park's discretionary decision not to place a warning sign at Cinnamon Bay Beach and its policy considerations of resource allocation, visitor safety, visitor access, conservation and scenic preservation. At oral argument, the government specifically emphasized concerns for aesthetics, the preservation of which, it contends, is one of the primary policy objectives of the Park.[2]

The government asserts that the policy objectives of aesthetic or scenic preservation and visitor safety are expressed in two key locations. First, the government states that aesthetic and safety policy concerns are

---

[2] Throughout the government's motion to dismiss and reply to Wyatt's opposition motion, it intermittently refers to a collection of policy considerations, including concerns for safety issues, allocation of resources, and scenic preservation. See Defs.' Mot. to Dismiss at 12-16. The focal point of its argument, however, is aesthetics or scenic preservation.

included in the National Park Services Sign Manual, which provides that signs should

> minimally intrude upon the natural or historic setting in National Park System areas, and to avoid an unnecessary proliferation of signs, while striving to ensure for the safety of park visitors.

(Defs. Mot. to Dismiss at 13.) Aesthetic policy considerations are expressed in the Park's statutory mission to

> conserve the scenery and the natural and historic objects and the wildlife therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1. The Government contends that the decision not to post a warning sign at Cinnamon Bay clearly bears a rational relationship to these policy objectives, thus satisfying the second prong of the discretionary function exception analysis.

The Government's position is unpersuasive, particularly in light of the fact that Cinnamon Bay Campground is as developed a site as exists within the confines of the Virgin Islands National Park.[3] Warning signs, including those cautioning against high voltage and indicating that no lifeguard is on duty, are present, as are directional signs indicating the location of amenities. *See Fabend*, 174 F. Supp. 2d at 360. The government's attempt to characterize Cinnamon Bay Campground as pristine in order to justify its aesthetic policy considerations falls short, and cannot be saved by the simple assertion that "Cinnamon Bay is held out as an unspoiled island refuge." (Defs.' Mot. to dismiss at 19.)

A similar argument by the government in *Cestonaro v. United States* was found wanting. At issue in *Cestonaro* was whether the Park's decision not to provide any additional lighting or warn of the dangers at a parking lot located within the boundaries of the Christiansted National

---

[3] The Court, in *Fabend v. Rosewood Hotels and Resorts, LLC*, 174 F. Supp. 2d 356 (D.V.I. 2001) has previously noted the characteristics of Cinnamon Bay Campground, which "consists of some forty cottages with terraces, several tent sites, a general store, a snack bar, a restaurant, a museum, a beach shop, a water sports rental booth, a sewage treatment plant, a reverse osmosis facility, a 150-seat amphitheater with a projection booth and permanent screen, hotel registration desk, storage facility, public restrooms, and a kiosk with bulletin boards." *Fabend*, 174 F. Supp. 2d at 360.

Historic Site in St. Croix was rationally related to its stated policy objective of preserving the site's historic quality pursuant to 16 U.S.C. § 1. *Cestonaro*, 211 F.3d at 757. The appellate court held that it was not:

> [u]nder proper circumstances, the National Park Service may balance aesthetic and safety interests and avoid liability through the discretionary function exception. To properly invoke an aesthetic interest, there must be a reasonable relationship between that interest and the challenged action. ... It is clear that the requisite nexus between the challenged action and 16 U.S.C. § 1 is missing.

*Id.* The Court of Appeals noted that they arrived at their holding because the Park failed

> to show how providing some lighting, but not more, is grounded in the policy objectives with respect to the management of the National Historic Site. Similarly, the National Park Service has not presented a viable argument as to how its alleged failure to warn is rooted in its policy objectives.

*Id.*

The government's argument in this case contains limitations similar to the one it presented in *Cestonaro.* Here, as in *Cestonaro v. United States,* the government has failed to demonstrate how adding one more cautionary measure to an already existing practice of having such cautionary measures would be inconsistent with the policy objective of preserving the site's aesthetic integrity.[4] This Court, like the Cestonaro court, "doubt[s] [the government] can reasonably make such arguments." *Id.* Similarly, the government's contention in this case that placing a warning sign at Cinnamon Bay Beach would be cost prohibitive and would interfere with its policy objectives stated in 16 U.S.C. § 1, when the site already contains some signs, is unpersuasive.

The government makes an additional argument that they may invoke the protection of the discretionary function exception because the Park publishes sufficient warnings about the dangers of shorebreak in handouts given to visitors. The court's ruling in *Fabend v. Rosewood,* however, contradicts this argument.

---

[4]     The government cites to 16 U.S.C. § 1 without addressing how having potentially only one more sign warning against the specific danger of shorebreaking waves, as Wyatt claims is necessary, would offend its purpose.

The *Fabend* court concluded that the Park was not protected by the discretionary function exception because there was no rational relationship between the Park's decision to publish warnings only in its handouts and selectively at beaches, and its policy concerns of aesthetic preservation, resource allocation and public safety. *Fabend*, 174 F. Supp. 2d at 360. The court noted that the level of development at Cinnamon Bay belied the government's argument that additional signage would mar the site's aesthetic qualities: "The presence of these various signs at the Campground along with the Park's decision to post a warning sign at the more pristine Trunk Bay contradicts the government's aesthetics argument." *Id.* The *Fabend* court also rejected the other policy considerations proffered by the government. *Id.* at 361.[5]

■ In assessing the government's arguments the Court finds there is no rational relationship between the Park's decision not to post a warning sign specifically addressing the dangers of shorebreaking waves at Cinnamon Bay Beach and the policy objectives of aesthetic preservation, resource allocation and safety as they are expressed in the Sign Manual and the statute defining the Park's mission. In sum, the government has failed to satisfy the second prong of the discretionary function exception analysis, and has not demonstrated that the challenged decision in this case is of the type the discretionary function exception is designed to protect.

Accordingly, the Court will deny the motion to dismiss.

---

[5] The government's claim that *Fabend* is irrelevant because at the time Wyatt suffered his injury there was no longer a shorebreak warning sign at Trunk Bay and the Park's warning procedures were therefore not inconsistent is undercut by its own motion to dismiss. According to the Park, temporary signs, which are changed according to surf conditions, were still in use at Trunk Bay at the time of Wyatt's accident. See Decl. of Stephen Clark in Support of Defs.' Mot. to Dismiss at Ex. G.