NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2779
_____

WALTER DIBEASE, MONICA DIBEASE

v.

UNITED STATES OF AMERICA

Walter DiBease,
            Appellant
_____

On Appeal from the United States District Court
For the District of New Jersey
(Civ. Action No. 22-cv-05931)
District Judge: Honorable Christine P. O'Hearn
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 3, 2024

Before: JORDAN, HARDIMAN, and PORTER, *Circuit Judges*

(Filed September 19, 2024)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Walter DiBease slipped and fell outside of a United States Post Office while attempting to access the lobby before normal business hours. He sustained injuries from the fall and sued the United States for negligence under the Federal Tort Claims Act (the "FTCA"). The government moved to dismiss, claiming sovereign immunity under the discretionary function exception to the FTCA. The District Court agreed with the government and dismissed the case for lack of subject matter jurisdiction. We will affirm.

## I. BACKGROUND

### A. Factual Background

On a Friday morning in February 2021, about 25 minutes before normal business hours, DiBease slipped and fell on a snow and ice covered walkway outside of the United States Post Office in Haddonfield, New Jersey (the "Post Office"), while trying to access the lobby, which is open all the time. He suffered severe injuries from the fall.

The U.S. Postal Operations Manual (the "Operations Manual") says that, "[a]t the postmaster's discretion, lobbies may remain open 24 hours a day to allow customers access to PO boxes and self-service equipment[.]" U.S. Postal Service, *Postal Operations Manual* § 126.43 (2002), https://www.nalc.org/workplace-issues/resources/manuals/pom/POM-July-2016.pdf [https://perma.cc/4W2Q-9CGX]. Under the Postal Service Supervisor's Safety Handbook (the "Safety Handbook"), however, postmasters are required to "establish snow and ice removal plans where necessary[,]" to "[k]eep snow and ice away from utility and fire protection equipment" and to "[p]rovide for reinspection and cleaning as often as necessary to handle drifting

2

snow and refreezing." U.S. Postal Service, *Supervisor's Safety Handbook* § 8-15.2 (2008), https://www.nalc.org/workplace-issues/resources/manuals/other/EL-801-June-2008-Supervisors-Safety-Handbook-with-revisions-through-May-1-2014.pdf [https://perma.cc/VS2J-MJVD].

## B.  Procedural Background

DiBease, after exhausting his administrative remedies through the Postal Service,[1] filed a complaint in District Court, alleging negligence under the FTCA, and further alleging that the postmaster's decision to not remove snow and ice from the Post Office's walkways when the lobby was open even after normal business hours was a breach of duty of the sort shared by all businesses in New Jersey. The government moved to dismiss for lack of subject matter jurisdiction, arguing that, while the United States waives its sovereign immunity for certain torts under the FTCA, it does not waive such immunity if the tort arises when a government employee is acting within delegated discretion. That proviso to sovereign immunity is known as the "discretionary function exception." The District Court held that the exception applied and that it lacked jurisdiction to hear the case, so it granted the government's motion and dismissed DiBease's claim without prejudice. DiBease has timely appealed.

---

[1] DiBease sought relief through the Postal Service's remedial process by submitting a claim seeking $750,000 in damages. The Postal Service denied his claim in April 2022 and informed him that he had six months to sue in a United States District Court if he was dissatisfied with that decision. DiBease filed his complaint in the U.S. District Court for the District of New Jersey in October 2022.

## II.	DISCUSSION[2]

"[T]he United States is immune from suit unless it consents to be sued."  *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010).  In the FTCA, the government waived its immunity for its agents' torts "caused by [a] negligent … act or omission … if a private person[] would be held liable to the claimant" under the laws of the jurisdiction in which the act or omission occurred.  *Id*. at 457 (quoting 28 U.S.C. § 1346(b)(1)).  But that waiver does not cover discretionary functions – that is, when a claim arises from an agent's "exercise or performance" of "a discretionary function or duty … whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

"The discretionary function exception … marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  *United States v.*

---

[2] DiBease invoked the District Court's jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction to hear this appeal under 28 U.S.C. §1291.

The District Court determined that the government's motion presented a factual challenge to subject matter jurisdiction, and we agree.  *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) ("A facial 12(b)(1) challenge … attacks the complaint on its face without contesting its alleged facts …. But a factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts.").  In reviewing a factual challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the court may consider evidence outside the pleadings."  *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 251 (3d Cir. 2016) (citation omitted).

In reviewing a factual 12(b)(1) challenge, "we exercise plenary review over the District Court's legal conclusions, [and] we review the Court's findings of fact, including findings related to jurisdiction, only for clear error."  *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

*S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 808 (1984). With the exception, Congress sought to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort[.]" *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (quoting *S.A. Empresa*, 467 U.S. at 814). To invoke the discretionary function exception, the government must show two things: first, that its agent's action "involv[ed] an element of judgment or choice," and second, that the judgment involved was "of the kind that the ... exception was designed to shield[,]" i.e., "decisions based on considerations of public policy." *Id.* at 322-23 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

## A.     The conduct at issue must be viewed broadly.

"As a threshold matter, before determining whether the discretionary function exception applies, a court must identify the conduct at issue." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012). DiBease argues that the conduct at issue is the postmaster's failure to keep the Post Office premises free of hazardous snow and ice, warn patrons about the danger, or place barricades around unsafe areas. The government contends that the conduct must be considered at a greater level of abstraction: "[It] is the postmaster's decision to provide 24-hour lobby access and the conditions under which to do so." (Answering Br. at 16.) The government is correct.

The conduct at issue is defined by the scope of the agent's discretion. *See Merando v. United States*, 517 F.3d 160, 168 (3d Cir. 2008) (holding that "[t]he relevant inquiry is whether the controlling statutes, regulations, and administrative policies mandate" a specific course of action). The postmaster chose to keep the Post Office open

5

twenty-four hours, and the administrative policies here do not mandate a snow removal process for non-business hours.  Operations Manual § 126.43; Safety Handbook § 8-15.2.  Without express instruction, the decision to keep the lobby open necessarily involved "decisions as to the precise manner in which to do so[] and … execution of those decisions[,]" *Merando*, 517 F.3d at 168, including a snow and ice removal plan.  Thus, we agree with the District Court that the relevant conduct is keeping the lobby open for twenty-four hours and choosing not to remove snow and ice from walkways and sidewalks outside the Post Office outside of normal business hours.  *See id.* at 166 ("Plaintiffs' … focus … is too narrow" (quoting *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993))).

**B.     The conduct at issue was discretionary.**

To determine if the conduct at issue was discretionary, we look at whether the government agent's action "involve[d] an element of judgment or choice[.]"  *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536).  That excludes cases where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," in which case "the employee has no rightful option but to adhere to the directive."  *Id.* (quoting *Berkovitz*, 486 U.S. at 536).

The Operations Manual explicitly leaves to "the postmaster's discretion" the option of keeping the post office lobby open to the public during non-business hours. § 126.43.  The Safety Handbook requires the postmaster to "establish snow and ice removal plans where necessary[,]" and to "reinspect[] and clean[] as often as necessary to handle drifting snow and refreezing."  § 8-15.2.  That responsibility, qualified by the

6

phrase "where necessary" and "as often as necessary[,]" gave the postmaster a measure of choice. *Id.*; *see Williams v. United States*, 2018 WL 5077652, at *1-8 (W.D. Va. October 18, 2018) (holding that the Operations Manual and Safety Handbook "leave[] room for judgment" by using the language "where necessary" and "as often as necessary"). Thus, the conduct at issue – again, keeping the lobby open for 24 hours and not clearing snow and ice during non-business hours – was discretionary, and the first prong of the discretionary function exception is satisfied.

C.     **The conduct at issue was the type of conduct that the FTCA was designed to shield.**

In determining whether the postmaster's discretion was "of the kind that the discretionary function exception was designed to shield," we ask whether the decisions made are "susceptible to policy analysis." *Gaubert*, 499 U.S. at 322-23, 225. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324. "That presumption, however, can be rebutted." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 336 (3d Cir. 2012).

The government argues that the postmaster's conduct was rooted in the policy considerations of convenience, safety, and budgetary concerns:

> [A] postmaster may consider … whether staff is needed onsite after hours and, if so, the type of staff (e.g., clerks, maintenance, security, etc.) and the costs thereof; the degree of maintenance (if any) that should be conducted after hours; the extent to which the premise's temperature should be maintained after hours and the expense of doing so; or whether the premises should be lit after hours and the expense of doing so.

7

(Answering Br. at 31-32.) DiBease disagrees, arguing there were no "policy considerations involving post office operations" involved in the decision. (Opening Br. at 28.) Instead, he asserts that, in defining the conduct at issue as the mere failure to remove ice and snow, "this case is a 'garden variety' tort claim that arises from the common law duty imposed upon commercial landowners[.]" (Opening Br. at 41-42.)

Congress requires the United States Postal Service to "provide prompt, reliable, and efficient services to patrons in all areas." 39 U.S.C. § 101(a). When deciding to keep the Post Office lobby open, the postmaster "allow[ed] customers access to P.O. boxes and self-service equipment at any time" while determining that custodial staff were not needed during non-business hours. (J.A. at 38.) "We can analyze that [decision] in policy terms[, a]nd reasonable minds can differ" on whether and how to keep the lobby open all day while keeping the premises reasonably safe during winter, so we agree with the District Court that the second discretionary function prong is met. *Clark v. Sec'y of United States Navy*, 102 F.4th 658, 662 (3d Cir. 2024); *see also Bell v. United States*, 238 F.3d 419 (6th Cir. 2000) (unpublished table decision) ("The postmaster's decision to allow access to the public – without requiring postal employees to check the facility whenever it rains during the off-hours – … fit[s] within the second prong of the discretionary function test.").

### D. No carve-out applies.

In some cases, initial decisions may be susceptible to policy analysis, but "subsequent decisions … [are] not necessarily protected." *Cestonaro v. United States*, 211 F.3d 749, 756 (3d Cir. 2000). That is when the subsequent decisions themselves are

8

not "grounded in the policy objectives with respect to the management of the" government site. *Id.* at 757; *see Gotha v. United States*, 115 F.3d 176, 181 (3d Cir. 1997) (the discretionary function exception excludes "mundane, administrative, garden-variety, housekeeping problem[s] that [are] … far removed from the policies applicable to the [government]'s mission[.]"); *cf. Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955) ("The Coast Guard need not undertake the lighthouse service.  But once it exercised its discretion to operate a light … and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order[.]").

DiBease argues that clearing snow and ice is a "garden-variety housekeeping problem" unprotected by the discretionary function exception.  (Opening Br. at 20-21.) That may be true if we analyzed the conduct at issue narrowly, looking only at the failure to clear snow and ice.  *See Bolt v. United States*, 509 F.3d 1028, 1034 (9th Cir. 2007) ("[C]learing snow and ice from parking lots constitute[s] a matter of routine maintenance beyond the scope of the discretionary function exception[.]").  But viewed together with the decision to keep the lobby open twenty-four hours, the decision to clean the snow only once the Post Office opened for the day was part of a larger constellation of choices susceptible to policy analysis.  *See also Clark*, 102 F.4th at 662 (refusing to extend the garden-variety-problem carve-out because it "applies only to truly mundane problems, such as failures to install lights, stairways, or railings[, a]nd it seems hard to justify under the language of the statute" (citation omitted)).  Thus, the discretionary function exception applies here and immunizes the government from suit.

**III.    CONCLUSION**

We are mindful of Mr. DiBease's plight, and one can certainly question the wisdom of the choice made by the postmaster in Haddonfield, but whether we agree with it or not is irrelevant.  Sovereign immunity applies, so we will affirm the judgment of the District Court.